(March 24, 1921.)

# H. W. C. SMITH, Respondent, v. WALKER D. HINES, Director-General of Railroads of the United States, Appellant.

[196 Pac. 1032.]

COMMON CARRIER—LIABILITY—NEGLIGENCE IN DELIVERY OF LIVESTOCK— ORAL CONTRACT — NONPREJUDICIAL ERROR — INSTRUCTIONS — DAMAGES.

1. *Held*, that plaintiff's right to recover in this action, taking the allegations of the complaint all together, is not based upon alleged oral contract, but on the alleged carelessness and negligence of defendant railroad corporation in performing its obligations as a common carrier.

2. The judgment of the lower court will not be reversed on account of error in the admission of evidence, where such error is corrected by proper admonitions or instructions to the jury to disregard such testimony, and it does not appear that such admonitions or instructions of the court have failed of their purpose.

3. Instruction in regard to liability of common carrier in providing proper facilities for unloading of livestock considered and approved.

4. A common carrier is required to deliver goods intrusted to him at a safe place accessible to the consignee, and where delivery of livestock is to be made from a car, such car must be placed by the carrier where it may be conveniently unloaded by the consignee.

5. In an action for damages, where there is substantial evidence to support the finding of the jury that defendant was negligent, such finding will not be disturbed by the appellate court.

6. Where, in an action against a carrier for damages to sheep before delivery to consignee, it is alleged and proved that the market

3. Duty of carrier of livestock with respect to animals carried, see note in 63 **Am. St.** 548.

Liability of carrier for loss or injury to livestock, see notes in 13 **Am. Rep.** 53; 130 **Am. St.** 433.

4. Liability of carrier for improper delivery of livestock, see note in 130 **Am. St.** 460.

6. Liability of carrier and measure of damages for injuries to livestock, see notes in 1 **Ann. Cas.** 158; 5 **Ann. Cas.** 416; 13 **Ann. Cas.** 1141.

value of such sheep was depreciated by reason of the fact that they would not breed on account of the injuries sustained, and that this element of damage flowed directly from the injuries in question, the jury under proper instructions from the court may award plaintiff just compensation for the loss thereby sustained.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for damages for loss of and injury to sheep. Judgment for plaintiff. *Affirmed.*

Geo. H. Smith, H. B. Thompson and John O. Moran, for Appellant.

After a plaintiff has once stated his cause of action he must recover *secundum allegata et probata,* or not at all. (*Elder v. Idaho-Washington Northern R. Co.,* 26 Ida. 209, 141 Pac. 982; *Boehrer v. Juergens & A. Co.,* 133 Wis. 426, 113 N. W. 655.)

The court erred in refusing to limit the plaintiff's right of recovery to the issues of the case as made by the pleadings and in eliminating from his statement of the issues any alleged promise of the dispatcher. (*Panhandle & S. F. R. Co. v. Sanderson* (Tex. Civ.), 218 S. W. 540.)

The court erred in receiving evidence that some of the ewes did not breed. The admission of this evidence was obviously prejudicial to the defendant. (*Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296.)

If property has a market value at the time and place of arrival, the time of the arrival of the property at its destination is the time for ascertaining its value. (Sutherland on Damages, 4th ed., sec. 906; *Colsch v. C. M. & St. P. Ry. Co.* (Iowa), 117 N. W. 281.)

It was error to receive evidence of the value or depreciation at any other time or place. (*St. Louis & S. F. R. Co. v. Lane,* 49 Tex. Civ. 541, 110 S. W. 530.)

The court erred in refusing defendant's requested instruction No. 7 and in giving his instruction No. 8. (*Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A., N. S., 257; *Missouri K. & T. R. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. ed. 690, see, also, Rose's U. S. Notes.)

Hays, Martin, Cameron & Hays, for Respondent.

"A carrier must deliver goods at a safe place; accessible to the consignee. And where delivery is to be made from a car it must be placed where it can be conveniently unloaded." (1 Michie on Carriers, p. 537; 10 C. J. 252; 4 R. C. L., "Carriers," sec. 287; *McMickle v. Wabash Ry. Co.* (Mo. App.), 209 S. W. 611.)

BUDGE, J.—This action was brought by respondent to recover damages for the loss of and injury to certain sheep transported by the Oregon Short Line Railroad from Horseshoe Bend to Parma, Idaho.

It is alleged in the complaint that respondent was the owner and in possession of 2,003 strong, healthy ewes, in splendid condition, with good fleeces of wool, and ready for breeding, which he offered for shipment at Horseshoe Bend, consigned to himself at Parma, and which were loaded by respondent into seven cars and were received and accepted by the carrier for shipment at about 4 P. M., November 14, 1918, and the usual bill of lading issued therefor; that the shipment arrived at Nampa about 8:30 P. M., where respondent discovered that a few of the sheep were down, and *"would have insisted upon his said sheep then and there being unloaded, if upon inquiry he had not been informed by the train dispatcher at Nampa, who was an agent and servant of the"* appellant *"that his sheep would be immediately taken to their destination at Parma, 24 miles westward, and there unloaded immediately upon their arrival";* that the shipment reached Parma about 11 P. M., whereupon respondent notified appellant's agents and servants and the persons in charge

of the train that some of the sheep were down and in danger of being killed unless immediately unloaded, and demanded that an engine then and there available, or some other engine, be used to move the cars to the chutes in order that they might be unloaded at once, but appellant, its agents and servants, failed and neglected so to do, and carelessly and negligently failed and neglected to spot the cars containing respondent's sheep at the stock chutes there provided for unloading stock; that as a consequence thereof respondent and one of his employees were obliged to spot the cars by hand, and, as a result of the delay occasioned thereby, 65 sheep, of the reasonable value of $20 each, were killed and a large number of other sheep were seriously and permanently injured and crippled, and their usefulness and market value lessened and depreciated to the extent of $1,500.

The answer puts in issue all the allegations of the complaint, and as a further answer and additional defense it is alleged that whatever injury was sustained by the sheep and whatever damage was suffered by respondent was caused and directly contributed by his negligence and carelessness in overloading the cars, and that respondent knew and was advised by persons employed by the railroad that the sheep could not be safely transported unless a smaller number was loaded in each car.

Appellant contends that respondent's right to recover damages, if any, is founded upon an oral contract made with the dispatcher at Nampa, as set out in that portion of his complaint italicized above, upon the theory, as we understand it, that respondent had elected to rest his case not upon the carrier's liability as generally obtaining, but upon a specific oral agreement; hence the burden was upon him to sustain the averment by proof. Appellant's contention is best exemplified in its requested instruction No. 2, which was refused by the court and assigned as error, as follows:

"You are instructed that the plaintiff bases his suit solely on the alleged agreement of the train-dispatcher at

Nampa, that the plaintiff's sheep would be immediately taken to their destination at Parma, and there unloaded immediately upon their arrival, and the further averment that upon the arrival of the sheep at Parma the defendant negligently failed and neglected to spot or place the cars containing the sheep at the unloading chute of the stock pens or yards of the carrier at Parma, and alleges that he sustained damages in consequence thereof. He is not entitled to recover on any other theory, and unless he establishes all of these averments by a preponderance of the evidence he is not entitled to recover, and your verdict will be in favor of the defendant.''

The complaint states a good cause of action, in the absence of that portion italicized above, and that language was designed only to enable respondent to prove conversations had with certain of appellant's agents and employees regarding the fact that some of the sheep were down at Nampa, and that it would be necessary to unload them immediately upon their arrival at Parma.

It is not to be inferred from the complaint that the terms of the contract of shipment were changed, modified or waived, either by the carrier or the shipper; but rather that the acts and statements of the carrier's agents and servants justified respondent in permitting the shipment to go forward, notwithstanding some of the sheep were down at Nampa. Respondent might have exercised his option to stop the sheep in transit, but he did not choose to do so after being informed by agents and employees of appellant that they would be immediately unloaded upon arrival at Parma.

Respondent's right to recover, as clearly appears from the complaint when considered as a whole cannot be said to be based upon an oral contract, but rather upon the carelessness and negligence of appellant in failing to properly spot the cars at the chutes at Parma, in order that the sheep might be unloaded without unreasonable delay.

Upon the trial, respondent failed to offer proof of any conversation with the train dispatcher at Nampa, but tes-

tified to conversations with the yardmaster and the conductor and brakeman in charge of the train. Appellant objected to the admission of any conversation with the yardmaster for the reason that respondent had alleged in his complaint that the conversation was had with the dispatcher. The court overruled this objection and admitted the testimony, but subsequently struck it out and instructed the jury that it should entirely disregard such testimony. Appellant contends that the admission of this testimony was highly prejudicial, and that the subsequent action of the court in striking it out failed to cure the error or remove the prejudice from the minds of the jury. Certainly there cannot be any such error in this regard as to require the case to be reversed. We think the well-founded rule is that errors of this character may be corrected by proper admonitions or instructions from the court to the jury, and unless it is affirmatively shown, or we are otherwise convinced that the admonitions and instructions have failed in their purpose, the judgment will not be reversed. (*Bayers v. Barry et al.* (Wash.), 194 Pac. 993, and cases therein cited.)

The court correctly instructed the jury that:

"It was" appellant's "duty to place the cars in proper position, with reasonable promptness so they could be unloaded without unreasonable delay. If the time of unloading was unreasonably delayed by the acts of the" appellant "under all the facts and circumstances proven, such unreasonable delay would constitute negligence for which the" appellant "would be liable, providing damage to" respondent "resulted. . . . . In determining what was reasonable under the circumstances the carrier had a right to take into account the urgency of" appellant's "other business, the length of time the sheep had been on the cars, the circumstances of whether it was feasible to unload them in the night-time and the necessity therefor, and the question of whether or not an engine was reasonably necessary to move the cars along the unloading track. . . . . " The respondent "does not charge" the appellant "with negli-

gence in causing or permitting any of the sheep to get down or injured prior to their arrival at Parma, nor with any negligence causing damage or injury to any of the sheep that had so become down or injured prior to the time that they could have been unloaded after their arrival at Parma, and he is not entitled to recover for any damages so arising.''

We think the correct rule of law is well stated in the case of *McMickle v. Wabash R. R. Co.* (Mo. App.), 209 S. W. 611, as follows: ''When shipment contracts require shippers to unload the cattle, it will be assumed that it was the carrier's duty to place the cars at the unloading chutes.''

And in Mitchie on Carriers, vol. 1, p. 537, where the author says: ''A carrier must deliver goods at a safe place, accessible to the consignee, and where delivery is to be made from a car it must be placed where it can be conveniently unloaded.'' See, also, 10 C. J., p. 252, and 4 R. C. L., Carriers, sec. 286.

Upon arrival at Parma and upon ascertaining that some of the sheep were down, respondent immediately notified appellant's agents of that fact and insisted that the cars be so spotted that he might unload the sheep. No attention was paid to this request, but the cars were left standing on the sidetrack, one car being spotted in front of the chute, and the engine and crew pulled out, leaving the respondent to unload his sheep as best he could. By the use of a pinch-bar he succeeded in moving the remaining cars up to the chutes and in completing the unloading of the sheep six hours after their arrival at Parma. There were no dead sheep in the first car unloaded; in the second there were a number of dead and injured sheep; in each succeeding car the number increased; and in the last car approximately 20 were found dead and a considerable number injured.

The jury found as a fact that appellant was negligent in that it failed within a reasonable time to spot the cars after their arrival at Parma, and that as a result thereof

respondent sustained damage. There being substantial evidence to support this finding, it will not be disturbed by this court.

Appellant insists that the court erred in receiving evidence that some of the ewes did not breed, because of their crippled condition. This evidence was introduced in support of the allegations in the complaint that the sheep "were ready for breeding" and that "their usefulness and market value" were lessened and depreciated. The point urged is that if the sheep had a market value at the .time and place of arrival, the time of such arrival at Parma is the time for ascertaining their value, and that it was error for the court to admit proof that the ewes would not breed, when such fact was not ascertainable until a month and three days after the injury was sustained, and that this is particularly true in view of the fact that some proof had been offered of the difference in value at the time and place of arrival. The market value and usefulness of the sheep were depreciated by reason of the fact that they would not breed. While the proof of this fact was not ascertainable at the time the sheep were unloaded at Parma, yet, if this element of damage actually flowed as a result of the injury sustained to the sheep, and there is no proof offered on behalf of appellant to the contrary, we think under proper instructions the jury would be entitled, in awarding respondent just compensation for the loss sustained, to take into consideration the additional fact that the sheep would not breed.

Conceding that evidence was admissible under the affirmative allegations of the complaint that the cars were overloaded, the jury found upon a conflict of evidence that the cars were not overloaded, and this finding will not be disturbed by this court.

Other errors assigned but not discussed have been carefully considered. Finding no prejudicial error in the record, the judgment is affirmed, and it is so ordered. Costs are awarded to respondent.

Rice, C. J., and McCarthy, Dunn and Lee, JJ., concur.