(No. 5753. December 15, 1931.)

C. A. CROSSLER, Respondent, v. SAFEWAY STORES, INC., and KENNETH CAMPBELL, Appellants.

[6 Pac. (2d) 151.]

Randall & Danskin, Frank L. Moore and Latham D. Moore, for Appellants.

A. H. Oversmith and A. L. Morgan, for Respondent.

BUDGE, J.—This action was brought by respondent against appellants seeking to recover damages for injuries sustained as a result of a collision occurring May 7, 1930, between a truck driven by the son of respondent and a truck driven by appellant, Kenneth Campbell, an employee of appellant, Safeway Stores, Inc. The cause was tried by the court and a jury and verdict was rendered in favor of respondent for $4,500 and judgment was entered thereon, from which judgment this appeal is taken.

The answer to the complaint herein contained, among other things, an affirmative defense of contributory negligence based upon a violation by respondent of the traffic ordinances of the city of Moscow, such traffic ordinances being attached to said answer as an exhibit. A motion to strike such affirmative defense, made by respondent, was sustained by the trial court, to which ruling appellants excepted and now assign as their first specification of error. Respondent, however, seeks to make the point that conceding appellants' position to be correct and that the trial court erred in striking all reference to said ordinance as well as other matters connected therewith from appellants' answer, such ruling of the court is not subject to review for the reason that appellants thereafter filed an amended answer and thereby waived any objection to such ruling. However after such ruling, and evidently in

an endeavor to comply therewith, although we deem it an unnecessary act, appellants filed what is designated as "amended answer," which, for all practical purposes, is nothing more than the original answer with the parts deleted that were ordered stricken by the court. In view of this situation and the rule announced in *Warren v. Stoddart*, 6 Ida. 692, there is no merit in respondent's contention.

Accordingly we proceed to review such ruling. The collision occurred in the vicinity of what is known as Hays Hall, a girls' dormitory at the University of Idaho, within the city of Moscow, which faces west on Blake Avenue, a public street of said city. Extending east from Blake Avenue along the south side of Hays Hall is a driveway which, when it reaches the southeast corner of the building, where the collision occurred, turns to the north and extends along the east side of the building. With respect to the character of the driveway it is alleged in the complaint and admitted by appellants: "that the University of Idaho caused a private driveway to be constructed on the south east side of the said Hays Hall for the convenience of the public and for the convenience of the uses for which said Hays Hall is and was used, and that such driveway has been, at all times herein mentioned, used by the public with the consent and invitation of the owner for the purpose of delivering food products and other merchandise to said Hays Hall, and that the plaintiff was using such driveway on the 7th day of May, 1930."

The affirmative defense ordered stricken contained the traffic ordinances of said city, section 16 thereof providing:

"It shall be unlawful for any person to be upon the running board or upon any other place on the outside of any motor vehicle, while such vehicle is in motion; and it shall be unlawful for the operator of any such motor vehicle to allow or permit any person to so be upon such places on such vehicle while it is in motion. . . . ."

And allegations to the effect that respondent was riding on the running-board on the outside of the truck driven by his son, which allegations were evidently intended as the basis

for proof of violation of a city ordinance and showing of contributory negligence thereby.

By the motion to strike, the question was presented as to whether or not the use of motor vehicles upon said driveway was subject to regulation by the traffic ordinances of the city of Moscow. It is apparent from the admitted allegations of the complaint, quoted above, that the driveway in question was a private one but used by the public with the consent and invitation of the owner. A similar situation received careful consideration by the supreme court of Massachusetts in the case of *Commonwealth v. Gammons,* 23 Pick. 201, where it is said:

"The single question presented here is, whether the place where the complainant and the defendant met, at the time of the collision, was a road, within the meaning of the statute. It appears that the place in question had not been laid out either as a highway or a town-way, and that the public had no rights in it, except by sufferance of the owners. . . . . The term 'road' is not necessarily limited to a public way; and there is nothing in the reason or purposes of that law, from which such a limitation can be implied. The object of the law is to prescribe a rule of conduct, for the convenience and safety of those, who may have occasion to travel and actually travel with carriages, on a place adapted to and fitted for travel, and actually used for that purpose, by a public laying out or by the dedication of the owners, or the actual permission and license of the owners, for the time being. . . . . The same reason applies to private roads, actually used, as to public roads, that is, roads to which the public have a permanent right, by laying out by prescription, or by dedication.

"Suppose a considerable number of persons should have a private right of way over a road, having estates adjacent thereto; is it not for their mutual safety and benefit, to have a known rule, to govern them in the enjoyment of this common right? Yet the owner of the soil, if he chooses, may exclude the public and all those who have not a right to the easement, by grant or prescription. Suppose a person, hav-

ing a house at the distance of one or two hundred rods from the highway, should make and open a convenient road to it, and open his house as a place of business or amusement, as a tavern or boarding house or school, or even for the general accommodation of visitors and persons bringing supplies to the house, and by a general license and permission so long as it should suit his convenience, should thus tacitly invite all persons to enter and pass up and down his avenue with their carriages; all the reasons which render a rule of the road useful, salutary and mutually beneficial in public ways, apply with equal force to such an avenue.

."The same considerations apply to courts and places in cities, paved and adapted to the purposes of travel, but upon which the owners choose to maintain a gate, to be occasionally closed, to rebut the presumption of a dedication. The owners may close them if they think fit, but when in fact they are open, and all persons are permitted by a general license to use them, they are roads, and the same reason applicable to other roads, applies to them. The same rule applies to wharves, on which there are ranges of warehouses, and along which there are usually streets and passages, though all private property.

"Upon the construction of the statute the Court are of opinion, that the term 'road,' used in the statute without qualification, applies in its ordinary acceptation to a place set apart and appropriated, either *de jure* or *de facto,* to the purpose of passing with carriages, whether by public authority, or by the general license and permission of the owners; that all the reasons, which induced the legislature to prescribe the rule requiring travellers respectively to turn to the right, extend to all roads so used; and therefore that it is no defence, on a prosecution for a violation of the statute, to show that the place where the collision took place, was not a public way.

"It is argued, that such a construction will trench upon the rights of private property, and the legislature have no power to prescribe the rules, by which individuals shall be governed, in the use of private property. But we think this rule does

not impair the rights of private property; it confers no right of way, in the lands of private owners. They may exclude all persons, if they think fit. But when those owners, by grant or permission or general license, express or implied, do allow their land to be used for a road, the legislature, having a superintending power over the persons and conduct of all the citizens, may prescribe a rule by which they shall use this privilege, whether permanent or temporary, for their ·mutual safety and convenience.''

Also, as was said in *Grulich v. Paine,* 231 N. Y. 311, 132 N. E. 100, 102:

''It is urged by the defendant that the statutes quoted are not applicable to the place of the collision, because the driveway is not a public street of the city of Oswego. It is undisputed, however, that the driveway was intended for the use of people with vehicles, at least in going to and from the railroad depot. Neither is it disputed that it was and had been in common use by the public. It was paved, curbed and had every appearance of a public street. The defendant was at the time of the collision about to use it as a public street. If the driveway had been at the time a public street, as it appeared to be, assuming as we do that the facts as they might have been found by the jury are true, the defendant violated each of such statutes.''

See, also, *Weirich v. State,* 140 Wis. 98, 17 Ann. Cas. 802, 121 N. W. 652, 22 L. R. A., N. S., 1221; *Danforth v. Durell,* 8 Allen (Mass.), 242.

The rule would seem to be that the law of the road, based on statutes, extends to all public highways, however created, and may also be applicable to roads not public highways if used for travel by the public (29 C. J., p. 649, sec. 413), and a like rule, based on ordinances is equally applicable to roads and streets used by the public within municipalities.

From the foregoing authorities and others that might be cited we are of opinion that appellants' contention is correct, namely, that the power which a municipality has to regulate the use of vehicles or other means of transportation within city limits is not limited to the geographical boundary lines of dedicated streets and alleys. In the instant case

we have a *de facto* driveway. To all intents and purposes it is a public highway, opened up for public use and used by the public without restraint but by invitation and consent of the university for its convenience and for the convenience of the public at large and is and has been so used by the public in the same manner and to the same extent as all other streets, alleys and highways within the boundaries of the municipality and thereby becomes subject to its police power and to its control and regulation by valid ordinances. The ordinance in question, presumably valid, was in force at and prior to the time of the accident. Respondent contends that the driveway in question was neither a street nor an alley of or within the jurisdiction of the city of Moscow nor subject to its traffic ordinances for the reason that the same had not been dedicated nor accepted by ordinance as prescribed by C. S., sec. 3977. While, in the absence of such dedication and acceptance by the municipality, and in the absence of use by the public and work done by the municipality, there may be no liability or duty upon its part to maintain and keep in repair streets used by the public not so dedicated or accepted, nevertheless, under its police power when streets or alleys, or driveways, such as the one here in question, which if properly dedicated would be accepted, are laid out, opened up and used by the public the same as other streets and alleys within the municipality, the same are subject to municipal regulation for the safety of the public. As was said in *Gallup v. Bliss*, 44 Ida. 756, 761, 262 Pac. 154, 156:

"Appellants contend that C. S., sec. 3977, requires the acceptance by ordinance before a city street can become such. Use by the public and work done by the city may, however, without such acceptance by ordinance, make the city liable for accidents occurring in what would be, if accepted in proper manner, a city street."

It might be observed that the ordinances in question do not limit their definition of the word "street" as used therein to dedicated streets and highways but provide that such term "shall include all or any portion of the streets or highways and other places of the City open to the public for use of

vehicles.'' It follows that the trial court erred in striking the affirmative defense from the answer.

Appellants also insist that the trial court erred in failing to grant their motion to discharge the jury and to declare a mistrial by reason of certain evidence given by Arthur Crossler, son of respondent, on direct examination with respect to a conversation had between the witness and the manager of appellant, Safeway Stores, Inc. The witness was asked the question, referring to said manager:

"Did he have any conversation with you in regard to this collision?"

to which the witness replied:

"He said there was no use to report it, their insurance would take care of it."

Upon objection that it was not responsive, and other grounds, the court struck the last part of the answer. Appellants then made the motion to discharge the jury and declare a mistrial, which the court denied. The motion was renewed at the close of the testimony, after denial of appellants' motion for directed verdict, but was again denied, and thereafter appellants requested the court to instruct the jury to disregard this testimony, which the court promised to do. We fail to find that the court at any time so instructed the jury.

The answer here involved was not responsive to the question, neither was it relevant to any issue in the case. The inference may legitimately be drawn therefrom, we think, that it was the purpose of the witness to get before the jury the impression that if appellants were liable their liability was covered by insurance. The rule seems to be conclusively established that evidence that defendant in a personal injury action is insured against loss in the event of liability is inadmissible and its introduction prejudicial error, where such evidence is deliberately and intentionally given. (See numerous authorities collected in annotation, 56 A. L. R. 1418 et seq.) This court said, in *Steve v. Bonners Ferry Lumber Co.*, 13 Ida. 384, 398, 92 Pac. 363, 367:

"The fact that a defendant was insured by a casualty company against injury of any of its employees is an im

material matter, and ought not to be permitted to go to the jury, and counsel ought not to be permitted to introduce any such evidence, for it is well recognized that it is only done for one purpose, and that is to prejudice the jury."

The trial court correctly struck out such testimony, but, however, failed to specifically instruct the jury to disregard it, which constituted prejudicial error. It has been held by this court that error in the admission of evidence may be cured by proper instructions to the jury. (*Smith v. Hines*, 33 Ida. 582, 196 Pac. 1032; *Erickson v. Edward Rutledge T. Co.*, 34 Ida. 754, 203 Pac. 1978.) Whether, if the court had so instructed the jury in the instant case, the error would have been cured, we are not called upon to determine.

In *Faris v. Burroughs Adding Machine Co.*, 48 Ida. 310, 282 Pac. 72, 74, it was held under the circumstances of that case that prejudicial error was not committed by certain remarks made by the attorney for plaintiff during the examination of the jury on the *voir dire* to the effect that there was an insurance company connected with or interested in the suit, where it also appeared that during the examination of one of the witnesses appellant had made the statement that he or his employer carried insurance or something to that effect, no objection or motion to strike having been made to this testimony. In that case this court indicated that it did not approve the practice of advising the jury that there may be an insurance company in the case. It was held, however,

"That there is a distinction between remarks made during the trial and bringing out during the testimony that defendant is protected by insurance and questioning the veniremen on the *voir dire* is apparent from a consideration of the cases which have passed on this subject."

It therefore follows that the trial court erred in failing to properly instruct the jury to disregard the evidence complained of.

Other errors have been assigned but in view of the disposal of this case these questions may not arise upon a new

trial and we therefore do not deem it necessary to dispose of them.

The judgment is reversed and the cause remanded for a new trial. Costs awarded to appellants.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.