358 P.2d 1041

**Gail BARRY, Plaintiff-Respondent,**

**v.**

**ARROW TRANSPORTATION COMPANY, a Corporation, and Dale Simpson, Defendants-Appellants.**

No. 8852.

Supreme Court of Idaho.

Nov. 29, 1960.

Darwin Cogswell, Glenn E. Bandelin, Bandelin and Cogswell, Sandpoint, for appellant.

Raymond T. Greene, James E. Hunt, Greene & Hunt, Sandpoint, for respondent.

McFADDEN, Justice.

This is the second appeal in this action. On the previous appeal (Barry v. Arrow Transportation Company, 80 Idaho 447, 333 P.2d 1008), the judgment in favor of the plaintiff and order denying new trial were reversed and the case remanded with directions to grant a new trial. This appeal is from the judgment in the second trial entered in favor of the plaintiff for $10,000, and from the order denying defendants' motion for judgment notwithstanding the verdict or in the alternative, a new trial.

The facts out of which this litigation arose are as follows: Plaintiff (respondent)

left Sandpoint, en route to Priest River, Idaho, the early morning of January 15, 1955, driving his Pontiac Sedan. At about 3:00 a. m., easterly from Laclede, his car skidded and ran off highway to the south, on plaintiff's left, with the rear end about even with the *berm,* or plowed snow. The highway was approximately 24 feet wide, with a shoulder approximately 2½ feet in width. This accident occurred at the bottom of a slight dip in the highway, with the crest of the hill about 600 feet to the west. At the time even with a slight snow falling, visibility was fair, the roadway was icy and covered with light snow. The snow berm on the shoulders of the highway had been pushed back about three feet from the edge of the paved portion of the highway. Plaintiff's car ran off the road where there was a depression or borrow pit, dropping off sharply about 2½ feet and then dipping to about 8 feet below the level of the road.

After skidding off the highway, plaintiff left his car, went back to Sandpoint and returned with Mr. Forest and his wrecker. They continued beyond plaintiff's car, westerly to the crest of the hill, turned around, came back to the car and stopped. While they were stopped and getting ready to set out flares, they heard defendant company's truck, driven by defendant Simpson, approaching from the west. Before getting the flares set out, Mr. Forest entered his wrecker and drove easterly down the high-

way. In the meantime, plaintiff was off the roadway, and according to his testimony:

"A. I was standing the other side of the snow berm, down in the ditch, approximately fifteen feet behind my car.

"Q. By behind your car, you mean what?

"A. Well, I mean—I would be east of my car; toward Sandpoint from my car."

Meanwhile Defendant Simpson (one of the appellants) was driving the truck and trailer of defendant Arrow Transportation Company (the other appellant, and referred to here as defendant company) easterly along the highway towards Sandpoint. This vehicle, a truck and trailer loaded with Petroleum products, weighed 72,000 pounds. Defendant Simpson, as he came over the rise saw the flashing lights on the wrecker, and knowing he couldn't stop on the icy road, drove his truck and trailer into the snow berm along the right hand edge of the road, applying his brakes only slightly. As the truck and trailer passed plaintiff's vehicle and plaintiff, the back end of his car was ticked by the other vehicle, and plaintiff was struck and thrown some distance from where he testified he was standing.

Plaintiff by his complaint charged defendant Simpson, with negligence in driving the tractor truck and trailer of defendant company in a careless, reckless and

negligent manner, at a speed in excess of 55 miles per hour, in the nighttime upon slippery and icy highways, and in that the speed was excessive, preventing defendant Simpson from maintaining the vehicle under control, the speed being greater than was reasonable and proper under the conditions; that by reason of such negligence he was injured, and suffered certain alleged permanent disability. Defendant's answer denied the allegations of negligence and damages and affirmatively alleged plaintiff was contributorily negligent in standing on the edge of the highway and in leaving his car without its lights on, standing partially on the shoulder of the highway.

During the course of his direct examination plaintiff was asked to identify Exhibit 12, which was a written statement prepared by a man connected with defendant company's insurance company and signed by plaintiff. In reply to counsel's question to identify the instrument, plaintiff answered:

"A. This is a statement written up by—

"Mr. Cogswell. Just a Minute. Go ahead

"A. (Continuing) I don't remember the fellow's name. He was from the insurance company anyway; from the Arrow Transport insurance, their insurance company."

"Q. A statement of what?"

"A. What happened at the time of the accident."

Defendants then moved for mistrial on the ground that the matter of insurance being injected into the case they could not have a fair trial, and that this was a deliberate attempt to get before the jury that insurance was involved. The court denied this motion and admonished the jury to ignore any reference to insurance, and further advised the jury that no insurance company was party to this action, and they would ignore any reference to insurance, and could only consider the evidence adduced at the trial and law given by the court, and permit no other considerations to influence their verdict. In instructing the jury, the court also gave the following:

"Instruction No. 49

"You are instructed that you will completely disregard and ignore any references to or mention of insurance or insurance companies. You will understand that there is no insurance company or agency a party to this action nor to be considered in any capacity or at all in the trial of this case. You will put out of your mind completely every mention, reference or allusion to such outside parties or interests. You will confine all your considerations and deliberations to the evidence introduced during this trial and the law as given you by the Court and permit no other considerations to influence you.

"You are instructed that you are hereby solely to do equal and exact justice between the parties to this action irrespective to any extraneous influence.

"The remarks of the plaintiff while on the stand which referred to insurance and insurance companies, you will eradicate from your minds and totally disregard."

Defendants assign the refusal of the trial court to grant his motion for mistrial as error and also questions the effectiveness of the court's admonition and instructions, by his motion for judgment notwithstanding the verdict and for a new trial. It is defendant's position that when any reference to insurance is improperly brought into the case, regardless of whether inadvertently or deliberately made, it is incumbent upon the trial court to declare forthwith a mistrial; that regardless of whether the court admonishes and instructs the jury the damage has been done and that such admonition and instruction merely re-emphasizes the damage already done, citing: Bratten v. White, 181 Okl. 543, 75 P.2d 474; M. & P. Stores v. Taylor, Okl., 326 P.2d 804; Dolliver v. Lathion, 183 Okl. 329, 82 P.2d 675; Hankins v. Hall, 176 Okl. 79, 54 P.2d 609; Beatrice Creamery Co. v. Goldman, 175 Okl. 300, 52 P.2d 1033, and Fike v. Grant, 39 Ariz. 549, 8 P.2d 242.

This is not a new problem to this court or in other jurisdictions. Crossler v. Safeway Stores, Inc., 51 Idaho 413, 6 P.2d 151, 80 A.L.R. 463; Curtis v. Ficken, 52 Idaho 426, 16 P.2d 977; Burns v. Getty, 53 Idaho 347, 352, 24 P.2d 31, see also annotations: 56 A.L.R. 1418; 74 A.L.R. 866; 96 A.L.R. 410; 105 A.L.R. 1334; 4 A.L.R.2d 818.

■ This court is in accord with the almost universal holdings that evidence to the effect the defendant in a personal injury action carries liability insurance protecting him from liability to third persons on account of his own negligence is not admissible. Crossler v. Safeway Stores, Inc., (supra), unless such information tends to show interest or bias on the part of a witness, Curtis v. Ficken (supra), or to corroborate fact in issue, Burns v. Getty (supra).

The exact problem here is not whether the evidence was admissible, but whether the error inherent in plaintiff's statement was corrected by the admonition and the court's instructions; or phrased differently, was it prejudicial error not to grant defendants' motion for mistrial?

■ Defendant's contention disregards the rule that a motion for mistrial is directed to the trial court's judicial discretion, [Denton v. Arnstein, 197 Or. 28, 250 P.2d 407; Libengood v. Pennsylvania R. R. Co., 358 Pa. 7, 55 A.2d 756; Romano v. Calderone, 78 R.I. 107, 79 A.2d 763; Salter v. Leventhal, 337 Mass. 679, 151 N.E.2d 275; Wright v. Bernstein, 23 N.J. 284, 129

A.2d 19.] and the trial court's ruling will not be disturbed unless there be shown such an abuse of discretion that defendant's rights are prejudiced.

We must keep in mind that error in the admission of evidence may be cured by proper instructions to the jury. Smith v. Hines, 33 Idaho 582, 196 P. 1032; Crossler v. Safeway Stores, Inc., 51 Idaho 413, 6 P.2d 151. And further, as is stated in Watkins v. Mountain Home Co-op. Irr. Co., 33 Idaho 623, 638, 197 P. 247, 251:

"Something must be presumed for the intelligence and fairness of the jurymen, and that they will not ordinarily be influenced into rendering a verdict contrary to the instructions of the court and the evidence by every idle or improper remark that may be made during the progress of a trial."

Where the trial court, as here, not only admonishes the jury to disregard the evidence of insurance, but also instructs the jury, it cannot be said refusal to grant the motion for mistrial constituted an abuse of discretion; and we must hold that no prejudicial error was committed in the premises. See Crossler v. Safeway Stores, Inc., 51 Idaho 413, 6 P.2d 151.

At the close of plaintiff's evidence, the defendants presented a motion for dismissal on the grounds of insufficiency of the evidence to establish their negligence and that the evidence affirmatively showed plaintiff's contributory negligence. The motion was denied, and defendants presented their evidence. This motion, as such, was not thereafter renewed. Denial of this motion is assigned as error, but such assignment is without merit. Production of testimony by defendants after denial of motion for dismissal waives the initial motion if it is not thereafter renewed. Ruud v. American Packing & Provision Co., 9 Cir., 177 F.2d 538; Boston Ins. Co. v. Fisher, 8 Cir., 185 F.2d 977; Palcher v. Oregon Short Line R. R. Co., 31 Idaho 93, 169 P. 298; Groefsema v. Mountain Home Cooperative Irrigation Co., 33 Idaho 86, 190 P. 356; Bevercombe v. Denney, 40 Idaho 34, 231 P. 427; Brown v. Jaeger, 46 Idaho 680, 271 P. 464; Muncey v. Security Ins. Co., 43 Idaho 441, 252 P. 870.

An examination of the record is required by defendants' fourth assignment of error directed to the trial court's refusal to grant their motion for directed verdict. This motion was based on the contention that there was no showing of any negligence on the part of the defendants. Such examination of the record must be made keeping in mind that where reasonable minds might differ as to the inferences to be drawn, or the conclusions to be reached from the evidence, defendants' negligence is a question of fact for the jury. Nissula v. Southern Idaho Timber Protective Ass'n,

73 Idaho 37, 245 P.2d 400, and cases cited therein.

■ The accident occurred while a light snow was falling on a slippery, icy highway, overlaid with snow; the defendant Simpson was driving a truck and trailer, 60 feet in length, loaded with petroleum products, and of gross weight of 72,000 lbs. Officer Monoghan, one of the plaintiff's witnesses, testified that a truck driver such as defendant Simpson would have had an unobstructed view to the place of the accident for 600 feet. Defendant Simpson testified that coming over the rise he had been travelling not to exceed 38 miles per hour, and after he saw Mr. Forest's wrecker some distance away, further testified:

"Well, I knew I couldn't stop, so I started to ease over to the side toward the snow berm alongside the right hand side of the road—I was going east—to get my trailer in the snow as much as possible to help hold me back."

"Q. What did you do with your brakes? A. I stepped on the brakes slightly.

"Q. You didn't slam them on? A. No, sir.

"Q. Why is the reason you didn't slam on your brakes? A. I figured I might jack-knife the truck and wreck it."

He also admitted the visibility was fair. From these facts and the other facts previously mentioned, the jury could have properly inferred that the speed at which defendant Simpson was operating this large truck and trailer, under the circumstances, with the dangerous highway conditions forcing him to drive into the snow berm in order to maintain control of his vehicle, constituted negligence. This court under the state of the record is constrained to the view that the jury had before it facts from which negligence was proven or could be inferred. Nissula v. Southern Idaho Timber Protective Ass'n, (supra); Manion v. Waybright, 59 Idaho 643, 86 P.2d 181.

Defendants' motion for judgment notwithstanding the verdict and for new trial, raises the question of contributory negligence on the part of plaintiff such as to bar recovery; also the question of sudden peril which confronted defendant Simpson, caused by plaintiff's alleged negligence in placing Forest's wrecker in the middle of the roadway in the nighttime on a slippery and icy road, as exonerating the defendants from liability.

■■ There is a conflict in the evidence as to where the plaintiff was actually standing at the time he was hit by defendants truck. Considering the evidence in the light of inferences most favorable to plaintiff, the plaintiff testified that he was standing "the other side of the snow berm, down in the ditch, approximately fifteen feet behind my car." Defendants contend that if

such were true, plaintiff couldn't have been hit. Defendants to make that assertion assume that plaintiff in using the term "fifteen feet behind my car", meant fifteen feet off the roadway; such assumption is not justified here, however, for the plaintiff further testified that by behind his car he meant "Well, I mean—I would be east of my car; toward Sandpoint from my car," and the jury having heard all the facts could properly have found, that the plaintiff was not contributorily negligent, and that he was acting reasonably under the circumstances. The issue of contributory negligence was a question of fact for the jury. Department of Finance of State v. Union Pac. R. R. Co., 61 Idaho 484, 499, 104 P.2d 1110. The issue as to "sudden peril", also a jury question, was properly submitted to the jury.

Defendants by their assignments of error claim such a disproportionate excessive award for plaintiff's injuries as to raise the presumption that the award was given under the influence of passion or prejudice.

Plaintiff sought special damages in the amount of $283.52, for $3,000 loss of income, for permanent disability in the amount of $27,000, and pain and suffering in the amount of $25,000.

The testimony of the various physicians is in direct conflict as to whether the plaintiff suffered permanent injuries. Dr. Smith, who first treated the plaintiff after the accident testified that plaintiff had suffered the following injuries: "laceration of the face, laceration of the right index finger, multiple abrasions and contusions, sprained right knee and ankle, a thoracic strain, a sprained pelvis and a sprained right wrist." No bones were broken. He further testified that the injuries would be painful and that it was possible that the discomfort would be continuous, and that there was probably some permanent disability. Dr. Wendle testified that plaintiff would have continuing trouble with his right leg and he thought plaintiff had some permanent injury. Dr. Munson testified positively that plaintiff suffered permanent injury, which will trouble plaintiff in later life. The doctor that testified on behalf of the defendants questioned whether there would be any permanent injury.

The plaintiff also testified that he was off work following the accident until the end of March, some 2½ months. That he had to terminate one job because he couldn't do the climbing required; that while he could actually do carpentry work, he could not do it comfortably, and that he has constant trouble with his right leg.

What was stated by this court in the case of Garrett v. Taylor, 69 Idaho 487, 490, 210 P.2d 386, 387, is particularly appropriate here:

"* * * In Kircher v. Atchison T. & S. F. Ry. Co., 32 Cal.2d 176, 195 P.2d

**50**

427, 434, the supreme court of California stated the rule: ' * * * it is well settled that even though the award may seem large to a reviewing court, it will not interfere unless the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice.'

"The trial judge's conclusion that the verdict was not excessive is entitled to some weight in the determination of that question in this court, particularly in determining whether the verdict is tainted with passion or prejudice. Foster v. Pestana, 77 Cal.App.2d 885, 177 P.2d 54. Except for his contention that the amount of the verdict is so excessive as to indicate passion or prejudice, the appellant does not contend that anything occurred at the trial to arouse or appeal to passion or prejudice, and he attempts no showing in that regard."

In the instant case, defendants claim that the injection of the matter of insurance, previously discussed, influenced the jury in regard to the matter of damages. It must be recalled however, that the award is substantially less than awarded in the first trial of this case where the matter of insurance was not interjected. Not only must the trial court's opinion be given weight in determining whether the verdict was tainted with passion or prejudice, but the determinations of two separate juries also must be considered. Monarch G. & S. M. Co. v. McLaughlin, 1 Idaho 650; Albaugh v. Mt. Shasta Power Corporation, 9 Cal.2d 751, 73 P.2d 217, 3 Am.Jur. 452, App. & Err. No. 892; 5A C.J.S. Appeal and Error § 1654, p. 422. From the record before us, we are of the view that the verdict was not tainted with passion or prejudice.

Judgment affirmed.

Costs to respondent.

TAYLOR, C. J., SMITH and KNUDSON, JJ., and CRAMER, District Judge, concur.