973 P.2d 148

Raedean INAMA and Megan Inama, **Plaintiffs–Respondents–Cross Appellants,**

and

Miles Inama and Betty A. Grant,

Plaintiffs,

v.

Fred and Donna BREWER dba Fred's Mobile Transport and Ronald Mark Cowles, **Defendants–Appellants–Cross Respondents.**

No. 23893

Supreme Court of Idaho, Boise, December 1998 Term.

Feb. 16, 1999.

---

1. Despite court order, there was never any evidence submitted supporting the existence of the

trust as a legal entity.

Cantrill, Skinner, Sullivan & King, Boise, for appellants.   Clinton O. Casey argued.

Lojek & Strother, Chartered, Boise, for respondents.   Donald W. Lojek argued.

JOHNSON, Justice Pro Tem.

This is a personal injury case. We affirm the judgment awarding damages to the injured parties. We also affirm the denial of discretionary costs to the injured parties.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Raedean Inama (Raedean) and her daughter Megan (collectively Inama) were traveling in a vehicle that was rear-ended by a truck driven by Ronald Cowles (the driver), who was acting in the scope of his employment for Fred's Mobile Transport (Fred's), a business operated by Fred and Donna Brewer (the Brewers). In this opinion, we refer to the driver, Fred's, and the Brewers collectively as defendants. Inama sued defendants for damages caused by the accident.

At trial, the trial court allowed jurors to submit written questions to the attorneys for use in interrogating witnesses. While Inama's attorney was conducting direct examination of Raedean's expert economic witness (the economic expert) about other job oppor-tunities available to Inama in the local area, Inama's attorney received from the trial court a question posed by a juror concerning whether the wage range for other jobs to which the expert testified was based on gross or net numbers. Without objection from defendants, Inama's attorney then conducted the following examination:

Q   I really don't want to get into any tax questions and you are not a tax economist.

A I'm not interested in the tax questions.

Q   But are these gross numbers or net numbers for tax purposes?

A I assume—I didn't calculate any taxes because I basically made the assumption that any award would be subject to taxation and I made no inquiry into any taxes.

Q   So they're gross?

A Those are gross income figures.

During a recess after this examination, Inama's attorney asked the trial court to prohibit defendants from cross-examining the economic expert concerning tax questions. The trial court granted this request and then instructed the jury as follows:

Before we go on, there's—what lawyers in their strange way sometimes refer to as a judge trying to unring the bell. I think, as you know, one of the questions that was asked before the recess was a question that had been asked by one of the jurors that had to do with possible tax consequences and I think you need to know that you should disregard the question and the answer because the issue of tax consequences is not an issue before you. Any tax matters will be handled very competently by the State Tax Commission and the Internal Revenue Service of the United States. You don't have to worry about that problem. They'll work that out in their special way at sometime in the future. So you simply don't have to consider what the effect of taxation would be with respect to any recovery of damages in this matter.

Later that day, defendants requested that the trial court grant a mistrial based on the economic expert's testimony about the taxa-

tion of any damage award. The trial court denied this request, but gave the jury the following additional instruction:

> The other thing I want to make sure that you understand is that going back to the tax question that came up during the course of this morning's testimony, I hope I didn't put it in your mind that the—in this case that the witness was correct about his assumption about tax consequences and I want to reiterate to you that the tax consequences are not a matter for you to decide. When I made, an offhand comment about the IRS and the State Tax Commission, I did not mean to infer that any recovery in this case was either taxable or nontaxable. I don't know the answer to that and you don't know [sic] answer to that and so, please, don't consider that when you finally go back to deliberate tomorrow.

At the conclusion of the trial, defendants asked the trial court to give Idaho Jury Instruction (IDJI) 937, which tells the jury: "Your award, if any, for personal injuries will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." The trial court refused to give this instruction but did give the jury the following instruction: "You are reminded that in deciding the issue of damages you are not to consider whether there are any tax consequences associated with an award for damages."

During trial, the trial court refused to allow defendants' vocational expert (the vocational expert) to testify concerning Raedean's employability and reinstatement rights in her employment with the United States Postal Service (the postal service) based on conversations the witness had with employees of the postal service. In an offer of proof, the vocational expert revealed that with respect to Raedean's reinstatement and employability with the postal service, he intended to testify as follows: (1) the postal service employees stated that the postal service had a policy "to work with and accommodate individuals who have limitation and restriction;" and (2) a postal employee "indicated that, in fact, the postal service, he believed as an employer, is in the forefront of bringing indi-

viduals back and accommodating them with limitation because ... the Postal Rehabilitation Act ... talks about reasonable accommodation for someone who has a disability." The trial court then ruled as follows:

> I don't really have any problem with him being an expert in the manner that he's discussed as far as his background and training is concerned. But there's a difference between having an opinion as an expert and merely rehashing what other people have told you. And basically what he's doing here is saying, but the folks at the post office said that she can come back and we'll accommodate her. That's not an expert opinion. That's getting in hearsay evidence. If you are going to get that evidence in at all, you are going to have to do it through the post office people who apparently are not in the mood to talk to you or anybody else. So I just don't think we're talking about an expert opinion here. We're talking about this man being a talking head for the post office people who won't be here. This is not an opinion. This is simply the post office says she can work there and we'll accommodate her.
>
> . . .
>
> Sounds like you got the wrong person here. I'm not going to—if that's all he's going to testify to is somebody else told me this, somebody from the post office told me that these are their policies, I don't think—once again, I think it's just—we're not talking about an expert opinion that's going to assist the trier of fact. We're talking about, I learned something from somebody else who won't come into [sic] testify and it is not subject to cross-examination and hearsay is hearsay. If there are other areas in which you want the witness to testify where he does have some expertise that will assist the jury, that's fine, but for him to just give his opinion that the post office—or that she could be working at the post office, I don't think his opinion will—if it is an opinion that will assist the jury. Frankly, I don't think it's an opinion, it's just a rehash of what the post office told him.
>
> . . .

But as far as his opinion as to whether or not the witness could still be working at the post office, no, it's—just as I said, it does not seem to be an opinion that is based on special expertise or anything like that. It's just reporting what the post office people had told him and the post office people, they should be the ones here testifying for that and being subject to cross-examination. I don't think it's any type of—remotely close to an expert opinion on that.

At trial, Raedean's testimony included the following:

Q In addition to the dollar amounts that you just put there on the board, did you have any damage to your automobile?

A Yes.

Q Was it totaled in the accident?

A Yes.

Q What do you think the value of that automobile was?

A [The driver's] insurance company—

Q Just what the value of the automobile?

A Right around $6,000, $6,200.

Q 6,200?

A Uh-huh.

Q So that would be an additional 6,200 for the car?

A No. I have been reimbursed for my car.

The trial court then instructed the jury as follows:

Ladies and gentlemen, if you remember, at the beginning of the trial we said insurance has nothing to do with this case. Please don't discuss insurance. Obviously, the witness is inadvertently getting into the issue. Just forget the whole question of insurance. This is a case that is between the plaintiffs and the defendants. There are no insurance companies that are parties to this action.

If by chance some amount has been paid by somebody at some other time, that will be taken into consideration by the court at another point.

Again, I repeat to you what I said before about don't even think about the question of whether somebody has or does not have any insurance in this matter. That should not enter into your decision, either as to who is at fault or the amount of damages, if any, that should be awarded.

The jury found that the driver was totally responsible for the accident and awarded Raedean $140,000 in economic damages and $50,000 in noneconomic damages and awarded Megan $5,000 in damages. Defendants requested a new trial under Idaho Rule of Civil Procedure (I.R.C.P.) 59(a)(1) (irregularities in the proceedings), I.R.C.P. 59(a)(6) (insufficiency of the evidence), and I.R.C.P. 59(a)(7) (errors in law), or, in the alternative, for judgment notwithstanding the verdict. The trial court denied these requests.

As part of the judgment, the trial court awarded Inama expert witness fees of $500 for each witness, but denied any additional award of costs for these witnesses as discretionary costs under I.R.C.P. 54(d)(1)(D). The trial court found that the costs were necessary and reasonable but not exceptional:

This was a time-consuming case that involved the use of expert witnesses, numerous depositions, mediation, and several days of trial. Some of the experts hired by the plaintiffs did not testify at trial. Nevertheless, trial preparation, legal issues, discovery, pre-trial motions, and trial presented nothing exceptional. Six-figure cases involving substantial discovery, substantial copying charges, and expert witnesses who charge more than $500.00 no longer are unusual or extraordinary. For the most part the claimed discretionary items were routine costs associated with modern litigation overhead. There was nothing exceptional about either the nature or the amount of discretionary costs necessitated by the case. The expert witnesses all presented form affidavits suggesting that their fees were exceptional, but in the sense of the cost rule there was nothing exceptional about their charges. The claimed discretionary costs have demonstrated only the probability that the existing court rule on costs allowable as a matter of right is unrealistic and out of date.

The discretionary costs, although reasonable and necessary, are not exceptional and will be disallowed.

Defendants appealed. Inama cross-appealed.

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN BARRING CROSS–EXAMINATION OF THE ECONOMIC EXPERT CONCERNING TAXATION AND CURED THE EFFECT OF THE TAXATION TESTIMONY THROUGH ITS INSTRUCTIONS.

Defendants assert that the trial court should not have (1) allowed the economic expert to testify that any damage award was subject to income taxes, (2) denied defendants cross-examination of the economic expert, and (3) failed to cure the testimony of the economic expert by giving a proper instruction to the jury. We disagree.

We first note that we do not address defendants' challenge to the testimony of the economic expert concerning taxation of any damage awards. Defendants did not object at the time of the economic expert's testimony to the question posed about taxes or to his answer. Even in their briefs on appeal, they make no argument and cite no authority for their contention that it was improper for the trial court to allow the economic expert to testify regarding taxes. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (concluding that "[a] party waives an issue cited on appeal if either authority or argument is lacking").

■ We turn then to defendants' contention that the trial court should have allowed them to cross-examine the economic expert concerning taxation of any damage award. In *State v. Marek,* 112 Idaho 860, 736 P.2d 1314 (1987), the Court pointed out that "[t]he control of cross-examination of a witness is committed to the sound discretion of the trial judge, and absent a showing of prejudice, a limitation of cross-examination imposed by a trial judge will not be overturned on appeal." *Id.* at 867, 736 P.2d at 1321. Without reaching the question of any prejudice there may have been to defendants, we conclude that the instructions the trial court gave the jury concerning the taxability of a damage award

cured any error there may have been. *Barry v. Arrow Transp. Co.,* 83 Idaho 41, 47, 358 P.2d 1041, 1045 (1960). The trial court gave the jury three different instructions concerning taxation of damage awards, all of which instructed the jury to disregard tax consequences. We conclude that collectively these instructions cured any problem created by the economic expert's testimony concerning taxation.

■ Concerning the trial court's refusal to give defendants' requested IDJI 937 instruction, we exercise free review. *Hook v. B.C. Inv., Inc.,* 125 Idaho 453, 455, 872 P.2d 716, 718 (1994). We review a trial court's decision refusing to give a proposed jury instruction "to determine whether the instructions, taken as a whole, fairly and accurately reflect the issues and the applicable law." *Lankford v. Nicholson Mfg. Co.,* 126 Idaho 187, 189, 879 P.2d 1120, 1122 (1994). "If the Court finds that the instructions adequately present the issues and state the applicable law, the Court will not reverse the trial court." *Id.* "The giving of an erroneous jury instruction does not generally justify granting of a new trial unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion." *Sherwood v. Carter,* 119 Idaho 246, 260, 805 P.2d 452, 466 (1991).

■ In the present case, the trial court instructed the jury to disregard tax consequences in rendering any damage award. Even though the trial court's instruction did not take the extra step contained in IDJI 937 of telling the jury that any personal injury award was not subject to income taxes, the effect of the instructions the trial court gave was to direct the jury not to consider the taxation of any damage award. We presume the jury followed this instruction.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO ALLOW A VOCATIONAL EXPERT TO TESTIFY CONCERNING RAE-DEAN'S POTENTIAL EMPLOYABILITY WITH THE POSTAL SERVICE.

Defendants assert that the trial court should have allowed the vocational expert to

testify concerning Raedean's employability and reinstatement rights with the postal service. We conclude that the trial court did not abuse its discretion in not allowing the testimony.

■ In *Doty v. Bishara*, 123 Idaho 329, 848 P.2d 387 (1992), the Court stated: "The trial court, in its discretion, may allow an expert to render an opinion based in part upon hearsay or other inadmissible evidence, as long as the expert testifies as to the specific basis of his opinion and reaches an opinion through his own independent judgment." *Id.* at 336, 848 P.2d at 394. When reviewing a trial court's decision under an abuse of discretion standard, this Court engages in the three-step inquiry outlined in *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ The offer of proof concerning the proposed testimony of the vocational expert contained no independent conclusion about Raedean's employability and reinstatement rights with the postal service as required by *Bishara*. 123 Idaho at 336, 848 P.2d at 394. In addition, the trial court's comments reveal that it understood that it had discretion, acted within the outer boundaries of that discretion, applied the correct legal standard to that decision, and reached its decision by an exercise of reason. Therefore, the trial court did not abuse its discretion.

## IV.

### THE TRIAL COURT DID NOT DEPRIVE DEFENDANTS OF A FAIR TRIAL.

Defendants assert that, under the doctrine of cumulative error, the trial court's rulings discussed in parts II and III above combined with Raedean's testimony indicating that the driver's insurance company had reimbursed her for the value of her vehicle deprived them of a right to a fair trial. We disagree.

■ In addition to our rejection of defendants' challenge to the rulings discussed in parts II and III above, we conclude Raedean's testimony did not deprive defendants of a fair trial. Under I.R.E. 411, evidence of liability insurance is generally not admissible "upon the issue whether the person acted negligently or otherwise wrongfully." The trial court instructed the jury before trial, as well as immediately following Inama's testimony, that it should not consider insurance in rendering its award, and this Court has concluded that "error in the admission of evidence may be cured by proper instructions to the jury." *Barry v. Arrow Transp. Co.*, 83 Idaho 41, 47, 358 P.2d 1041, 1045 (1960). "Where the trial court, as here, not only admonishes the jury to disregard the evidence of insurance, but also instructs the jury, it cannot be said refusal to grant the motion for mistrial constituted an abuse of discretion; and we must hold that no prejudicial error was committed. . . ." *Id.* The same is true in the present case.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING INAMA DISCRETIONARY COSTS.

On cross-appeal, Inama asserts that the trial court abused its discretion in denying expert witness fees as discretionary costs. We disagree.

■ In our recent case of *Fish v. Smith*, 131 Idaho 492, 960 P.2d 175 (1998), the Court considered a trial court's exercise of discretion in denying discretionary costs for expert witness fees, stating as follows:

The prevailing party in a civil action has a right to seek reimbursement of the costs incurred in prosecuting or defending the action. I.R.C.P. 54(d)(1)(A). The process for considering an allowance of discretionary costs is contained in I.R.C.P. 54(d)(1)(D):

(D) Discretionary Costs. Additional items of cost not enumerated in, or in an amount in excess of that listed in subparagraph (C) [involving mandatory costs], may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party. The trial court, in ruling upon objections to

such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item or discretionary cost should or should not be allowed. In the absence of any objection to such an item of discretionary costs, the court may disallow on its own motion any such items of discretionary costs and shall make express findings supporting such disallowance.

The grant or denial of discretionary costs is "committed to the sound discretion of the district court," and will only be reviewed by an appellate court for an abuse of that discretion. *Zimmerman v. Volkswagen of America, Inc.,* 128 Idaho 851, 857, 920 P.2d 67, 73 (1996), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1245, 137 L.Ed.2d 327 (1997). In considering whether the trial court abused its discretion in ruling on a request for discretionary costs, we make a three-step inquiry: "(1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason." *Id.* *Fish,* 131 Idaho at 493, 960 P.2d at 176.

In the present case, the trial court understood it had discretion and acted consistently with the applicable legal standards of I.R.C.P. 54(d)(1)(D), noting that costs in addition to those allowed as a matter of right "are allowed as a matter of discretion, but only if the prevailing parties show that they were necessary, reasonably incurred, exceptional, and assessable against the adverse parties in the interest of justice." The trial court's findings "satisfied both the dictates of I.R.C.P. 54(d)(1)(D) and the exercise of reason step in the abuse of discretion test outlined in *Zimmerman.*" *Fish,* 131 Idaho at 493, 960 P.2d at 176.

■ Inama contends that the trial court abused its discretion because it failed to expressly state as to each specific item of discretionary cost whether it should be allowed or not as required by I.R.C.P. 54(d)(1)(D). We addressed the same issue in *Fish,* noting that the Court had resolved the question in *Roe v. Harris,* 128 Idaho 569, 917 P.2d 403 (1996). In *Fish,* the Court stated:

[T]he trial court acted within the boundaries of its discretion and correctly followed the legal standard for evaluating discretionary costs because "although it did not evaluate the costs item by item, it did make express findings as required by I.R.C.P. 54(d)(1)(D) with regard to the general character of the requested costs." *Id.* at 574, 917 P.2d at 408. We conclude the same is true here.

131 Idaho at 494, 960 P.2d at 177. In the present case, Inama appeals only from the trial court's denial of expert witness fees. The trial court stated that "[s]ix-figure cases involving substantial discovery, substantial copying charges, and expert witnesses who charge more than $500.00 no longer are unusual or extraordinary. For the most part the claimed discretionary costs were routine costs associated with modern litigation overhead." The trial court's express finding that the discretionary costs were reasonable and necessary but not exceptional after identifying the general nature of the discretionary costs satisfied the requirement that it make express findings.

■ For the first time on appeal, Inama contends that automatic application of I.R.C.P. 54(d)(1)(D) violated her state and federal constitutional rights to be free from arbitrary actions of government officials and from deprivation of a property interest without due process of law. Inama's specific argument is that the $500 cap on costs allowed as a matter of right is arbitrary and that she was deprived of a large percentage of her actual costs incurred. She also contends that Art. I, § 18 of the Idaho Constitution, which declares that the courts are open to everyone and that "justice shall be administered without sale . . . ," has been violated because I.R.C.P. 54(d)(1)(D) is a substantial bar to many litigants because of the requirement that discretionary costs must be exceptional in order for the prevailing party to recover them. Inama did not preserve these issues for appeal because these constitutional challenges were not presented to the trial court. We will consider constitutional issues

raised for the first time on appeal " 'if such consideration is necessary for subsequent proceedings in the case. I.C. § 1–205.' " *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (quoting *Messmer v. Ker,* 96 Idaho 75, 78, 524 P.2d 536, 539 (1974)). Our disposition of this case requires no further proceedings.

## VI.

## CONCLUSION

We affirm the judgment and the trial court's denial of discretionary costs.

We award costs, but not attorney fees, on appeal to Inama.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS, CONCUR.