570 P.2d 1366

**KELLER LORENZ COMPANY, INC., a Washington Corporation, dba Payette Vinegar & Cider Co., Plaintiff-Respondent,**

v.

**INSURANCE ASSOCIATES CORPORATION, an Idaho Corporation, and R. J. Marmillion, an Individual, Defendant-Appellant.**

No. 11823.

Supreme Court of Idaho.

Nov. 8, 1977.

Donald W. Lojek of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-appellant.

Phillip M. Barber of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiff-respondent.

BAKES, Justice.

The plaintiff respondent Keller Lorenz Company, Inc., is a Washington corporation doing business as the Payette Vinegar & Cider Company. On August 14, 1973, fire destroyed a warehouse owned by the plaintiff along with personal property stored inside and around the building. The defendant appellant R. J. Marmillion is president of the defendant appellant Insurance

Associates Corporation. This suit arose out of the plaintiff's allegations that in the weeks immediately preceding the fire Marmillion had agreed to insure certain personal property on the warehouse grounds, but had failed to do so, and because of this omission the personal property destroyed by fire was uninsured. The defendants denied that Marmillion had agreed to insure the property in question. The case was tried upon two theories: (1) that the plaintiff had been damaged by the defendants' negligent breach of a professional duty to insure the plaintiff's property, and (2) that the plaintiff had been damaged by the defendants' breach of a contract to procure insurance on the property. The jury found for the plaintiff on both counts and awarded damages for the value of the uninsured property destroyed by the fire.

The issues in this case separate into two categories—those dealing with liability and those dealing with proof of damages.

## LIABILITY

This is the third case in which this Court has recently considered the liability of an insurance agent or agency for failure to provide insurance on property which is later destroyed. Defendants argue that this case is more like *Benner v. Farm Bureau Mutual Insurance Co. of Idaho, Inc.*, 96 Idaho 311, 528 P.2d 193 (1974), in which the insurance agent was not found liable for damages to the insured or would-be insured, than it is like *McAlvain v. General Insurance Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976), in which the insurance agent was found liable. We must discuss the facts and pleadings in this case at some length in order to determine whether *Benner* or *McAlvain* controls.

The complaint as amended alleged that in the weeks preceding the fire Marmillion had agreed to procure a fire insurance policy which would be effective on August 1, 1973 (the date an existing policy on the warehouse would expire), and which would cover 100% of the value of the personal property involved in this suit. The complaint further alleged that after the fire

Marmillion had notified the plaintiff that he had not procured insurance covering that property and that he had told them that they were not covered. The complaint grounded one count in tort for the defendants' negligent breach of a professional duty to procure insurance and one count in contract for breach of an agreement to procure insurance. Neither the original complaint nor the amended complaint, which was filed after the defendants filed their answer, joined any insurance company as a co-defendant or sought recovery against an insurance company for which the defendants were agents.

The defendants in their answer denied the allegation that Marmillion had agreed to obtain insurance for the personal property destroyed by the fire. Furthermore, they did not plead in the alternative that if Marmillion made such an agreement as agent of a particular insurance company then, based upon *Benner v. Farm Bureau, supra*, he had bound that insurance company by his oral agreement and thereby procured insurance. Thus, defendants did not indicate in their answer, nor did they later indicate by any other pretrial document appearing in this record, that they also intended to rely at trial upon an alternative defense that Keller Lorenz had a binding contract of insurance with the insurance company bound by Marmillion's oral binder. *See Benner v. Farm Bureau, supra.*

At trial several witnesses employed by the plaintiff Keller Lorenz, including Keller Lorenz' principal stockholder-officers, testified that Marmillion had visited their offices shortly before the fire and one of the stockholder-officers testified that Marmillion had inspected the warehouse and agreed to insure the personal property on the warehouse grounds. Marmillion denied this in his testimony. Marmillion did testify that he had authority to orally bind several insurance companies for which he was an agent.

Following the presentation of evidence, the defendants requested the court to instruct the jury that if Marmillion agreed to insure Keller Lorenz, this constituted an

oral binder contract between Keller Lorenz and an insurance company and that, consistent with *Benner v. Farm Bureau, supra,* the defendants would not be personally liable under that contract. The court refused these instructions.

The court instructed the jury that the plaintiff grounded its claims in two counts: breach of contract to procure insurance and negligent breach of a duty to procure insurance. A special verdict form was submitted to the jury asking it to answer questions concerning each of these counts. The jury returned a verdict for the plaintiff on both counts, finding that the defendants had negligently failed to procure insurance for the plaintiff and that the defendants had breached a contract to procure insurance for the plaintiff and assessed damages of $27,550. The court denied the defendants' motion for a judgment notwithstanding the verdict and entered judgment on the verdict from which this appeal was taken.

■ The defendants first argue that the special verdict was inconsistent because they characterize it as finding that (1) the defendants negligently failed to procure insurance, and (2) the defendants had made a contract insuring the property at the warehouse, which contract was then breached. However, the jury did not find that defendants had made a contract insuring the property at the warehouse. Rather, it found that the defendants had contracted to procure insurance upon that property and breached that contract by failing to procure insurance. The jury's findings are not inconsistent. In a case such as this, the failure to obtain insurance can be both a breach of a contract to provide insurance and a negligent breach of a professional duty to provide insurance. As we explained in *McAlvain,* and as was more fully explained in *Hellbaum v. Burwell & Morford,* 1 Wash.App. 694, 463 P.2d 225 (1969), which was cited in *McAlvain,* recovery may be grounded in either theory or both, although double recovery is not allowed. The argument that the special verdict is inconsistent is without merit.

■ The defendants make a second argument—that they are not liable in tort or contract to the plaintiff because if Marmillion agreed to procure insurance, then this amounted to an oral binder which obligated an insurance company, thereby fulfilling the defendants' contractual and professional duties. They argue that as agents making the contract they are not liable under the contract, based upon this Court's decision in *Benner.* In *Benner* we held that an insurance agent who agreed to insure the plaintiff on behalf of a disclosed principal was not liable for the plaintiff's losses because he had apparent authority to bind the principal to an insurance contract. This was based upon the familiar agency rule that an agent for a disclosed principal who actually binds the principal is not personally liable for breach of the insuring agreement by the insurer. In this case, although the defendants denied that they agreed orally to bind the insurance coverage with any company, the jury found that they did orally agree to bind the coverage. Thus, the defendant was acting as the agent of a partially disclosed principal, i. e., Keller Lorenz knew the defendant was acting as agent for some principal, but did not necessarily know for which principal the agent was acting. Restatement (Second) of Agency § 4(2) (1957). In this situation, the agent is party to the contract as a principal and liable under it. Restatement (Second) of Agency § 321 (1957). *Cf. McCluskey Commissary, Inc. v. Sullivan,* 96 Idaho 91, 524 P.2d 1063 (1975).

■ This defense of the appellants—that, as agents, they bound a company so that they themselves are not personally liable—surely falls within I.R.C.P. 8(c)'s definition of affirmative defenses as "any . . . matter constituting an avoidance or affirmative defense." Because this defense depends upon proof of matters unrelated to the allegations in the complaint, matters which the plaintiff may not anticipate or be prepared to litigate without warning, I.R.C.P. 8(c) required the defendants to give notice in their pleadings that they intended to rely upon the defense. Had this defense been pleaded, the plaintiff

could have determined before trial whether there were sufficient facts to support the insurance company's liability to the plaintiff under the *Benner* case. If there appeared to be any likelihood that the insurance company, rather than the defendants, was liable to the plaintiff, defendants would have had an opportunity to bring the company into the action as a co-defendant. However, insofar as the record shows, the defendants gave the plaintiff no indication before the trial that they would rely upon this defense. To allow the defendants to assert this defense for the first time at trial would have significantly prejudiced the plaintiff's rights. Under I.R.C.P. 12(b), which provides that "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required . .," the trial court correctly denied the defendants' attempt to bring this issue before the jury.[1]

A review of the record shows that the agency defense was not tried by the express or implied consent of the parties and that asserting it now would prejudice the plaintiff who would not be able to bring in the insurance company as a co-defendant at this stage of the proceedings. Therefore, the consideration of this issue would not fall within the I.R.C.P. 15(b) exception to submissions of issues which are not presented by the pleadings, but which are tried with the express or implied consent of the parties. Having failed to assert the agency defense at an appropriate time, the defendants cannot rely on it at trial or in this appeal. *See Lynch v. Cheney*, 98 Idaho 238, 241–242, 561 P.2d 380 (1977), for a more thorough discussion of the question of whether issues not presented in the pleadings have been litigated with the implied consent of the parties.

Another reason why the jury should not have been given the defendants' proposed instruction is that not every promise to procure insurance is necessarily a binder of insurance. While a jury might find that an insurance agent's promise such as, "I will insure you effective today," is both a promise to insure and an oral binder of insurance, it might find that a promise such as, "I will provide you with a policy from a new company when your old company's policy expires," to be a promise to insure, but not an oral binder of insurance. That the jury found a promise to insure does not necessarily mean that the defendants had made an oral binder of insurance; the appellants' argument that a finding of a binder necessarily follows from a finding of a promise to insure is without merit. However, the argument does show why it is critical that the defendants inform the plaintiff before trial that they intend to rely on the defense that they actually bound an insurance company so that the plaintiff may have an opportunity to focus upon the question whether the agent's promise was also an oral binder of insurance and to prepare for trial by joining the insurance company.

■ Finally, the defendants argue that the following jury instruction was in error:
*"INSTRUCTION NO. 14*

"R. J. Marmillion was the agent of Insurance Associates Corporation at the time of the transaction described by the evidence. Therefore, any contract made, transaction undertaken, or performance attempted by R. J. Marmillion on behalf of Insurance Associates Corporation is in law binding on and the act of Insurance Associates Corporation."

The defendants argue that this instruction told the jury that Marmillion could only be

---

1. Compare *Williams v. Paxton*, 98 Idaho 155, 163–164, n. 1, 559 P.2d 1123, 1131–1132, n. 1 (1977), in which we held that the unconstitutionality of a statute was not an affirmative defense which had to be pleaded before trial, with *Jackson v. Bannock Vangas*, 97 Idaho 790, 554 P.2d 968 (1976), which required an affirmative defense of unconstitutionality of a statute, which affected the jury instructions, to be presented before the jury was instructed. The factors that were mentioned in *Williams* which helped determine whether the allegation was affirmative were whether the defendant has the burden of introducing evidence and whether the plaintiff must be alerted to the issue to be able to introduce evidence to combat the defense. In this case these factors indicate that the agency defense is an affirmative defense.

the agent of Insurance Associates and not of an insurance company.[2] Examination of the instruction shows that this is not the case. This instruction merely sets forth the quintessence of the agency relationship—that an agent (Marmillion) may bind his principal (Insurance Associates). We hardly think this proposition requires extensive citation of authority.

Accordingly, having rejected the defendants' assignments of error with respect to liability, that portion of the judgment is affirmed.

## DAMAGES

The defendant appellants make several assignments of error concerning evidence of the value of the damaged property, contending that the trial court erred in excluding some evidence and in admitting other evidence. We shall first discuss the exhibit which the appellants contend was improperly excluded.

■ The excluded exhibit was Keller Lorenz' taxpayer's declaration statement of personal property for taxing purposes filed with the Payette County Assessor's Office. It contained a detailed listing of nearly 40 items of Keller Lorenz' personal property, assigning both a cost and depreciated value for each of the items. The statement was dated approximately six months after the fire (February 12, 1974), was signed by L. C. Fairchild (Keller Lorenz' vice-president), and listed personal property with a total cost of $168,009.00 and a depreciated value of $63,730.00. Several of the kinds of equipment which Keller Lorenz contends were totally destroyed in the fire are listed in the schedule as having values greater than $0 and having depreciated values much less than cost values. The trial court excluded this exhibit on the ground that the evaluation of property for tax purposes has no relation to its evaluation for insurance purposes.

We think this exhibit was clearly relevant to the issue of valuation of the damaged property. It listed cost and depreciated values of property of the kind that Keller Lorenz claimed was totally destroyed, if not of the subject property itself. If for some reason the value of the property for tax purposes differed from its value for insurance purposes or this evaluation did not reflect Fairchild's considered judgment concerning the value of the property described, this could have been ascertained during Fairchild's examination. The jury could then determine the weight to be given this exhibit according to the testimony explaining it. However, on its face, the exhibit appears to be the assessor's anticipated evaluation, approved by a corporate officer of the plaintiff, of what the property would have been worth had it not been damaged by fire. As such, it was relevant to the issue of valuation and the trial court erred in refusing the exhibit's introduction into evidence.

■ The appellants' next objection concerns the testimony of an expert witness called by the plaintiff, an appraiser. They contend that his testimony should not have been admitted because the appraiser based his opinion upon the opinion of other appraisers without exercising his independent judgment. An examination of the cases and treatises dealing with the extent to which an expert valuation witness may rely upon hearsay in reaching his conclusion indicates a lack of uniformity in applying these evidentiary rules. On the one hand, the trial courts have been admonished that:

2. Marmillion has not argued that he should be excused from liability under the contract count of the complaint because he was the agent of a disclosed principal, Insurance Associates, and that it was the principal, Insurance Associates, who contracted to procure insurance, not Marmillion, the agent of Insurance Associates. Thus, we are not presented with the question of whether the agency defense is available to Marmillion in the contract count on the ground that he bound his principal Insurance Associates to a contract to provide insurance. However, because the jury found Marmillion had failed to perform a professional duty as an insurance agent to procure insurance, he would nevertheless be liable under the negligent breach of duty count of the complaint and thus he would not escape liability by successful assertion of the agency defense in the contract count.

"An expert witness may not, however, serve as a mere conduit for the hearsay opinion, the factual basis of which is not established through evidence, of another expert who does not testify when the expert who does testify lacks the requisite qualifications to render the opinion in his own right," *State v. Davis*, 53 Haw. 582, 499 P.2d 663, 669 (1972).

On the other hand the value of this hearsay testimony has been explained in the following manner:

"[*Pierce County ex rel. Bellingham v. Duffy*, 104 Wash. 426, 176 P. 670 (1918), and *Bremerton School Dist. 100–C v. Hibbard*, 51 Wash.2d 226, 317 P.2d 517 (1957)] taken together provide the following rules: (1) an expert witness will not be allowed to testify to a valuation opinion which is not the product of his independent judgment, but is merely another person's hearsay opinion which the witness has accepted as his own; but (2) an expert witness may, in the trial court's discretion, be allowed to testify to a valuation opinion even though some of the factors considered by the expert in reaching his opinion would be hearsay and inadmissible as independent evidence. We now hold that, when an expert is allowed to testify to a valuation opinion which is in part based on facts which would normally be hearsay and inadmissible as independent evidence, the trial court may in its discretion allow the expert to state such facts for the purpose of showing the basis of the opinion." *State v. Wineberg*, 74 Wash.2d 372, 444 P.2d 787, 794 (1968).

Since there must be a retrial on the damages issue, the trial court may again permit the appraisal expert to testify as to his valuation opinion if satisfied that it is the product of his independent judgment, even though it is based in part upon facts or the opinions of others which ordinarily would be hearsay and inadmissible as independent evidence. *See* McCormick on Evidence § 15, at 34–36 (2d ed. 1972).

■ The final issue which we must consider is whether the trial court improperly allowed Keller Lorenz to introduce evidence of the value of a vehicle destroyed by the fire. Plaintiff's testimony at trial indicated that shortly before the fire Virgil Fairchild, the president of Keller Lorenz, had agreed to sell the truck to the corporation. However, before the time of the fire, neither the corporation nor Fairchild had made any written memorandum or contract of sale, nor had the certificate of title been transferred from Fairchild to the corporation, nor had the corporation paid any of the purchase price to Fairchild, nor had any entry of a debt for payment of the purchase price of the vehicle been made on the corporate books, nor had the truck ever been used for company business or altered for company purposes. Indeed, one of Keller Lorenz' officers testified, "Virgil was the owner of that truck at the time of the fire," although others testified that it had been sold a day or two before the fire. The appellants argue that there was insufficient proof that Keller Lorenz owned this vehicle and thus the jury should not have considered the value of the vehicle as evidence of Keller Lorenz' loss.

We agree with the appellants that the jury should not have considered the value of the truck in assessing damages. The question, as we see it, is whether Keller Lorenz had an insurable interest in the vehicle under I.C. § 41–1806. This section provides the following:

"41–1806. INSURABLE INTEREST— PROPERTY.—

(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

"(2) 'Insurable interest' as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

"(3) The measure of an insurable interest in property is the extent to which the

insured might be directly damnified by loss, injury, or impairment thereof."

In *Boston Insurance Co. v. Beckett*, 91 Idaho 220, 419 P.2d 475 (1966), we construed this section and concluded that it gave a less inclusive definition of insurable interest than that found in cases such as *Coburn v. Fireman's Fund Insurance Co.*, 86 Idaho 415, 387 P.2d 598 (1963), in which the Court referred to common law definitions of insurable interest. In *Beckett* this Court held that a man with the right of use and possession of his mother-in-law's cabin who had paid a lease rental for the cabin site and the costs of upkeep on the property had no insurable interest in the cabin under I.C. § 41–1806. That was because his right to the use of the cabin could have been terminated at any time on the whim of his mother-in-law; thus, this right did not constitute a "substantial economic interest" in the safety or preservation of the property as contemplated by the statute even though it was a common law insurable interest under *Coburn.*

Based upon the record now before this Court, the agreement between Fairchild and Keller Lorenz did not fall within any of the exceptions to the Uniform Commercial Code's statute of frauds for sale of goods. I.C. § 28–2–201. Neither party could have enforced the contract of sale unless the other admitted that a contract had been made or unless the truck had been received and accepted. I.C. §§ 28–2–201(3)(b), –(c).

In a situation such as this, where because of the informality of the transaction it appears that the seller could have refused to go through with the sale of the truck at any time, or the buyer could have at any time refused to accept the truck, we believe Keller Lorenz had no "substantial economic interest in the safety or preservation" of the truck as contemplated by the statute at the time of the fire. For that reason, had there been a policy of insurance covering the warehouse property the truck would not have been included in its coverage because Keller Lorenz would have had no insurable interest in it under I.C. § 41–1806.[3] Therefore, the defendants' failure to procure the requested insurance did not result in any damage to Keller Lorenz regarding the truck.

Reversed and remanded. No costs.

McFADDEN, C. J., and BISTLINE, J., concur.

SHEPARD, J., concurs in result.

DONALDSON, J., sat but did not participate.

**3.** We emphasize that we are here concerned with Keller Lorenz' insurable interest in a vehicle in which it had no enforceable ownership or possessory rights *under a fire insurance policy on its own equipment or personal property*, not the question of the insurable interest of a bailee such as a parking lot operator under a liability insurance contract on vehicles stored in his care or the interest of an individual in a friend's borrowed car which the individual has or intends to put to his own use. We express no opinion on the questions of whether bailees or individuals might have insurable interests on such vehicle under kinds of insurance policies *other than fire insurance.*