695 P.2d 1262

**INTERNATIONAL HARVESTER CO., a Delaware corporation, Plaintiff-Respondent,**

v.

**TRW, INC., an Ohio Corporation, Defendant-Appellant,**

and

**Universal Oil Products Company, a Delaware Corporation, Defendant.**

No. 14282.

Supreme Court of Idaho.

Feb. 25, 1985.

Jeremiah A. Quane of Quane, Smith, Howard & Hull, Boise, for defendant-appellant.

John W. Barrett of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for plaintiff-respondent.

## ON DENIAL OF PETITION FOR REHEARING

BAKES, Justice.

This is an action for indemnity brought by plaintiff respondent International Harvester Co. (IHC), against defendant appel-

lant TRW, Inc. (TRW), and defendant Universal Oil Products Co. (UOP). International Harvester seeks to recover damages paid to Ronald and Catherine Farmer in satisfaction of a judgment entered upon a jury verdict in the Farmers' favor for personal injuries and property damage resulting from a single-vehicle accident involving a truck tractor manufactured by International Harvester. This Court affirmed the judgment entered in the lower court in *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976), hereinafter referred to as *Farmer*. The facts surrounding the accident are recounted in that opinion.

The amended complaint filed by the Farmers against IHC alleged that the truck tractor manufactured by IHC contained a defective gear box on the steering column and a defective seat mechanism. The amended complaint also alleged that IHC negligently installed and failed to test or inspect the components. The Farmers based their claim for recovery upon theories of negligence, breach of warranty, and strict liability. Letters and admissions contained in the record establish that IHC gave notice, tendered the defense, and demanded indemnification from TRW, the manufacturer of the steering gear box sold to IHC for installation in its truck tractors, and from UOP, the manufacturer of the air-suspension truck seat installed in IHC's truck tractors.[1] Both TRW and UOP refused the defense.

In the *Farmer* trial the jury returned a special verdict, finding against IHC on theories of negligence, breach of implied warranty and strict liability, and awarding the Farmers the sum of $250,000. Judgment for damages and costs was entered accordingly. In affirming the judgment on appeal, this Court determined that the trial court erred in submitting the theories of express and implied warranty to the jury, but that the errors were non-prejudicial since there was sufficient evidence to support the findings that the Farmers were entitled to recover on the theories of strict liability and negligence, 97 Idaho at 746, 553 P.2d at 1310.

IHC satisfied the *Farmer* judgment and filed the present action against TRW and UOP, seeking indemnity for the amount of the *Farmer* judgment, which it satisfied, along with attorney fees and costs incurred in the present action. In addition to facts already stated, allegations in IHC's complaint in this action include: that TRW designed, manufactured and sold to IHC a sealed steering gear mechanism which was installed without modification on the truck tractor manufactured by IHC; that UOP designed, manufactured and sold to IHC a certain air-suspension truck seat which was installed without modification on the truck tractor manufactured and assembled by IHC; that it was determined in *Farmer* that the products manufactured by TRW and UOP were defective; that IHC had been found only vicariously liable and was not itself at fault; and, that TRW and UOP were bound by those findings. The complaint further alleged that TRW and UOP breached their respective contracts of sale with IHC; that TRW and UOP breached implied warranties of fitness for a particular purpose; and that TRW and UOP were strictly liable to IHC for defects in their products and for failure to warn thereof.

TRW filed a motion for summary judgment on November 16, 1977, and IHC subsequently filed a cross motion for partial summary judgment against TRW. In a memorandum decision and order filed on July 14, 1978, the district court ruled that IHC's breach of warranty claims were barred by the applicable statute of limitations and granted summary judgment in favor of TRW on those claims. The district court then granted a partial summary judgment in favor of IHC on its claim for indemnity based upon negligence and strict liability, determining that TRW was bound by the judgment entered in *Farmer*.

---

1. Why TRW and UOP were not named as defendants by the plaintiffs in *Farmer* or impleaded by IHC is not apparent in the record.

TRW's motions for reconsideration of the partial summary judgment were denied.

The partial summary judgment of July 14, 1978, was incorporated into the court's final judgment tendered on June 30, 1981, in which the district court awarded IHC recovery against TRW for indemnity for the amount of the judgment in *Farmer*.[2] The judgment was certified pursuant to I.R.C.P. 54(b), and this appeal followed.[3]

## I

■ Appellant TRW initially challenges the preclusive effect which the district court attributed to the *Farmer* judgment, arguing that the district court erred in determining that TRW was bound by that judgment. Respondent IHC asserts three grounds under which TRW is bound by the *Farmer* judgment: (1) statutory "vouching in" under I.C. § 28–2–607(5)(a); (2) the common law "vouching in"; and (3) collateral estoppel. In its memorandum decision of July 14, 1978, the district court did not specify the basis on which it bound TRW to the judgment in *Farmer*, but determined simply that "[t]o deny IHC's motion [for summary judgment] would result in a procedural absurdity. ... IHC would be forced to continue prosecuting this action when in reality there is nothing left for it to prosecute. Its [IHC's] right to recover either against TRW or UOP or both is established by the prior judgment."[4] Although the district court's basis for binding TRW to the prior judgment is uncertain, we agree with respondent IHC that TRW is bound by the judgment entered in *Farmer* to the extent authorized by I.C. § 28–2–607(5)(a), which provides:

"Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

"(a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two (2) litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound."

See *Altec, Inc. v. FWD Corp.*, 399 F.2d 860 (5th Cir.1968); *Smith Radio Communications, Inc. v. Challenger Equipment, Ltd.*, 270 Or. 322, 527 P.2d 711 (1974): *see generally*, Comment, Voucher to Products Liability: The Mechanics of UCC 2–607(5)(a), 29 Ark.L.Rev. 486, 493 (1976). I.C. § 28–2–607(5)(a) is a verbatim adoption of § 2–607(5)(a) of the Uniform Commercial Code, and is generally recognized as a codification of the common law doctrine of "vouching in," whereby a judgment is conclusive as against a third person who is liable over to the judgment debtor where the third person has been given notice and an opportunity to defend. *Accord, United Pacific Ins. Co. v. Meyer*, 305 F.2d 107, 117 (9th Cir.1962); *Bedal v. Hallack and Howard Lumber Co.*, 226 F.2d 526 (9th Cir.1955). *See* Restatement (Second) of Judgments § 57 (1982).

It is undisputed that TRW received notice of the action against IHC in a letter from IHC that described the action against it, identified TRW's steering gear as a subject of the litigation and requested TRW's assistance at a legal engineering conference in preparation of the defense of the

---

**2.** Additionally, the June 30, 1981, judgment incorporated a second partial summary judgment that had been granted in favor of IHC, awarding IHC its costs and attorney fees incurred in defending and appealing *Farmer*, but denying IHC's request for attorney fees in the present action. The court also awarded interest on the amounts IHC was found to be entitled to recover.

**3.** Subsequent to the trial court's entry of summary judgment in favor of IHC against TRW on the issue of indemnity, IHC filed a motion for partial summary judgment against UOP. Although UOP remained an active party, later filing an answer to IHC's complaint, no decision on this motion for summary judgment is contained in the record, and UOP is not a party to this appeal.

**4.** Although the district court entitled this section of its decision "Collateral Estoppel," it did not mention the elements of collateral estoppel or purport to rely specifically on that theory in binding TRW to the *Farmer* judgment.

lawsuit. Additionally, the record contains a letter sent by IHC to TRW on April 23, 1973, in which IHC notified TRW that the original plaintiffs alleged that the accident was caused by defects in the steering gear mechanism supplied by TRW, tendered the defense of the action to TRW, and informed TRW that if it failed to accept the tender of defense, it would be bound in subsequent litigation against TRW for indemnification by the determination of facts common to the two litigations. A similar letter was sent to UOP. Thus, IHC complied with the requirements established in I.C. § 28–2–607(5)(a). TRW declined the defense of the *Farmer* action tendered to it by IHC, and, pursuant to the terms of I.C. § 28–2–607(5)(a), TRW is bound by "any determinations of fact common to" *Farmer* and the case at bar.[5] *See Parker v. Mauldin*, 353 So.2d 1375 (Ala.1977); *Uniroyal, Inc. v. Chambers Gasket and Manufacturing Co.*, 177 Ind.App. 508, 380 N.E.2d 571 (1978); *CGM Valve Co., Inc. v. Gulfstream Steel Corp.*, 596 S.W.2d 161 (Tex. Civ.App.1980). *See generally*, 46 Am. Jur.2d Judgments § 561; 3 Frumer & Friedman, Products Liability, § 44.05(2).

## II

This determination, however, does not resolve this appeal. There exist genuine issues of material fact as to what was actually determined in *Farmer*, which precluded the trial court's entry of summary judgment against TRW. It is necessary to isolate the common issues of fact determined in *Farmer* to ascertain whether any factual issues essential to IHC's indemnity claim against TRW remain unresolved, precluding entry of summary judgment on the issue of indemnity. *See Uniroyal, Inc. v. Chambers Gasket & Manufacturing Co., supra.*

Factual issues resolved by the jury in *Farmer* and common to this action, and thereby binding on TRW, include the causes of action under which the original plaintiffs were entitled to recover, the fact that the original plaintiffs were injured, and the amount of damages and that the judgment was satisfied by IHC. *See* 46 Am.Jur.2d Judgments § 561 (1969).[6] However, several factual issues were not specifically addressed by the *Farmer* jury, the most important for purposes of this appeal being whether the allegedly defective steering gear manufactured by TRW caused some or all of the injuries suffered by the original plaintiffs in *Farmer*. Also not addressed was whether some or all of the injuries were proximately caused by the allegedly defective seat manufactured by UOP. Another important factual issue not addressed was whether IHC was itself guilty of negligence, other than by merely failing to inspect, which proximately caused the injuries and which could preclude or limit indemnity[7] claimed by IHC.

In their amended complaint, the *Farmer* plaintiffs alleged that the truck manufactured by IHC had been manufactured and sold "with a defective steering mechanism; [and] further, the seat mechanism on the driver's side was defectively manufac-

---

**5.** Our conclusion that TRW is bound by the determinations of fact common to the litigations under I.C. § 28–2–607(5)(a) makes it unnecessary to address the applicability of the doctrines of common law "vouching in" and collateral estoppel.

**6.** One authority has stated that only in unusual cases involving breach of warranty claims will there be more than two issues common to the two litigations, *i.e.*, whether the goods were defective at the time of resale by the middleman, and whether the middleman was liable to the person harmed by the defect. *See* Degnen & Barton, Vouching To Quality Warranty: Case Law and Commercial Code, 51 Cal.L.Rev. 471, 484 (1963).

**7.** On remand, if IHC is found to be negligent, and if such negligence precludes indemnity, IHC may nevertheless be entitled to contribution under the terms of I.C. § 6–803. "Where joint tortfeasors are in pari delecto—that is, where each is chargeable with active or affirmative negligence contributing to the injury for which recovery was had—neither is entitled to indemnity from the other, although he may be entitled to contribution. 41 Am.Jur.2d Indemnity § 21, pp. 710–711. *See also Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F.Supp. 598 (D.Idaho 1976) (comparative negligence/fault applies to cases involving strict liability).

tured;" and, at the time of the accident the seat "collapse[d] and threw [plaintiff] upward against the steel beams of the cab, as a result of which the plaintiff ... suffered injuries...." The complaint also alleged that IHC "constructed, assembled and installed the component parts" in such a way as to cause the accident. At trial, the plaintiffs presented direct evidence that both the steering gear manufactured by TRW and the air-suspension seat manufactured by UOP were defective. The jury was instructed that the plaintiffs had alleged:

"That the truck had been manufactured and sold with a defective steering mechanism and a defective seat mechanism on the driver's side of the truck;

"That the alleged defective steering mechanism was the proximate cause of an accident involving the truck which occurred on or about March 16, 1971 on Highway 97 about five miles north of Goldendale, Washington while plaintiff Ronald K. Farmer was driving the truck;

"That the alleged defective seat broke loose and contributed along with the alleged defective steering mechanism to proximately cause injuries to the plaintiff, Ronald K. Farmer."

"That the manufacturer of a product that is reasonably certain to be dangerous if negligently made, has a duty to exercise reasonable care in the design, manufacture, testing and inspection of any component parts made by another so that the product may be safely used in a manner and for a purpose for which it was made."

After deliberation, the jury returned a verdict finding in favor of the plaintiffs and against IHC on theories of strict liability, breach of implied warranty, and negligence. The verdict, however, does not reflect whether the jury based IHC's liability on a finding that plaintiffs' injuries were caused by: (1) steering gear manufactured by TRW; (2) the seat manufactured by UOP; (3) IHC's installation of the components; (4) IHC's failure to test and inspect; or (5) some combination of the foregoing factors. On appeal of the *Farmer* judg-

ment to this Court, IHC in fact argued that the evidence was insufficient to establish specific defects in the truck. In affirming the judgment entered against IHC, this Court held that a plaintiff need not prove a specific defect to carry his burden of proof on a strict liability claim. *Farmer v. Intl. Harvester Co.*, 97 Idaho 742, 747, 553 P.2d 1306, 1311 (1976). We stated that a *prima facie* case may be established "by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant." *Id.*

The district court in this action recognized that no specific determination was made in *Farmer* whether the allegedly defective steering gear or the allegedly defective air-suspension seat had caused plaintiffs' injuries. In its memorandum decision dated July 14, 1978, the district court stated:

"It is undoubtedly correct that the jury verdict in [*Farmer*] does not reveal the basis for the jury's imposition of liability on IHC. When a judgment could have been based on more than one theory and the record does not reveal which theory it was in fact based upon, the factual determinations underlying the judgment are not ordinarily binding in subsequent litigation. ...

"But this does not mean that the prior judgment has no res judicata effect at all. At the very least ... the verdict indicates that liability was imposed on IHC either because of the steering box or because of the seat or because of both."

The district court failed to note an additional possible basis for the jury's verdict, that being the independent liability based on IHC's alleged faulty installation and/or failure to test and inspect. The trial judge in the original *Farmer* trial, in denying the defendant International Harvester's motions for judgment notwithstanding the verdict and new trial, stated: "On plain-

tiffs' theory of negligence, there is ample evidence that defendant International Harvester Company did not exercise reasonable care in the testing and inspection of steering mechanisms." On appeal in the original *Farmer* case, we specifically held that there was substantial evidence to support this independent claim for failure to test and inspect by stating:

> "Insofar as the allegation that appellants [IHC] were negligent in their duty of inspection and testing and the instruction based thereon, we hold that such issues were properly submitted to the jury...." 97 Idaho at 751, 553 P.2d at 1315.

IHC argues that the jury could not have found as a factual matter that IHC's alleged faulty installation was an independent or contributing cause of the accident since Farmers put on no direct evidence relevant to the installation or assembly of the steering components. However, in *Farmer* we held that direct proof of that defect or any other specific defect was unnecessary, and that "[p]roof of malfunction is circumstantial proof of a defect"; further, that "[t]estimony of the user or operator of the product as to the circumstances of the event is sufficient to establish malfunction." 97 Idaho at 748, 553 P.2d at 1312. Thus, under the *Farmer* rule, Mr. Farmer's testimony of the steering malfunction was sufficient circumstantial proof to support the allegation that a defect existed in the truck's steering resulting from IHC's construction, assembly and installation of the component parts. Therefore, there were three possible causes which alone or in any combination could have formed a factual basis for the jury's verdict. Those three causes are (1) improper installation, assembly and inspection of

the steering mechanism; (2) defective steering box provided by TRW; and (3) defective seat provided by UOP.

Viewing the evidence in the record in a light most favorable to TRW, as we must on summary judgment, *Holmes v. Iwasa*, 104 Idaho 179, 657 P.2d 476 (1983), it cannot be said as a matter of law that the allegedly defective steering gear manufactured by TRW was the cause of the plaintiffs' injuries in *Farmer*. Construing the record in favor of TRW, the jury in *Farmer* could reasonably have concluded that IHC was liable for plaintiffs' injuries either because of the allegedly defective seat manufactured by UOP and installed in IHC's truck or by the alleged independent negligence of IHC in installing, assembling and inspecting the steering mechanism.[8] It is not this Court's role to speculate as to which of these causes the jury found to support the verdict. Genuine issues of material fact exist as to the specific cause or causes of the plaintiffs' injuries in *Farmer*, precluding the issuance of a summary judgment against TRW.[9] *Reis v. Cox*, 104 Idaho 434, 660 P.2d 46 (1982).

Our disposition of this issue makes discussion of other issues raised by appellant unnecessary. The summary judgment entered by the district court is reversed and the cause remanded for further proceedings. Costs to appellant.

DONALDSON, C.J., and BISTLINE, J., concur.

SHEPARD, Justice, with whom HUNTLEY, Justice, concurs, dissenting.

The result obtained by the majority today is an absurdity and totally guts the

---

**8.** The plaintiffs in *Farmer* had alleged that the air suspension seat was defective and had thrown him against the steel roof of the cab. The injuries he had sought recovery for included a cerebral concussion, skull laceration and severe neurological damage.

**9.** We note that it was within the control of IHC at the initial *Farmer* trial to have these factual issues determined. IHC could have named TRW and UOP as third party defendants, or IHC could have submitted a special verdict form

allowing the jury to determine which of the alleged acts, singly or in combination, caused the plaintiff's injuries. However, IHC had no incentive to do so since such an effort might have resulted in a factual finding by the jury that IHC was independently rather than vicariously negligent, thus risking IHC's claim for complete indemnity against TRW and UOP. Having chosen not to avail itself of the opportunity to obtain these specific findings of fact, IHC cannot now claim prejudice by being required to litigate the unresolved factual issues.

concept of "vouching in" established by the common law and by statute in the State of Idaho. By its decision, the Court encourages a putative defendant in a products liability action to refuse to participate when properly vouched in and thereafter complain that the trial in which he refused to participate was somehow improperly conducted, that the findings of the jury were not sufficiently detailed or specific, and that he is not bound by the result. The decision then enables such a recalcitrant putative defendant to require that a second jury be impaneled to somehow discern the basis of the first jury's findings or, in the alternative, to retry the entire cause. Such is not only a foolish waste of judicial resources, but it places an unnecessary burden on the parties who participated in the first action by requiring them to participate in a second trial, the results of which are, as to them, foreordained and res judicata.

The majority states, "There exist genuine issues of material fact *as to what was actually determined in Farmer....*" I submit that such statement demonstrates the incomprehensibility of Part II of the majority opinion and hence of its result. The majority does not undertake to explain how a second jury will determine those "genuine issues of material fact," *i.e.,* "what was actually determined in *Farmer.*"

The majority suggests that "several factual issues were not specifically addressed by the *Farmer* jury." Among those factors are, whether the defective steering gear manufactured by TRW caused some or all of the injury suffered by the original plaintiffs; whether some or all of the injuries were proximately caused by the seat manufactured by UOP; and whether IHC itself was guilty of negligence other than mere failure to inspect the products. Our decision in *Farmer v. International Harvester Co.,* 97 Idaho 742, 750–751, 553 P.2d 1306, 1314–1315 (1976), made clear that "the steering gear box and the driver's seat at issue herein are purchased as complete units by International Harvester from independent suppliers. International Harvester only visually inspects such compo-

nent parts and the entire unit is given only a brief driving test ... Insofar as the allegation that appellants [IHC] were negligent in their duty of inspection and testing and the instruction based thereon ... such issues were properly submitted to the jury by correct instructions."

We further held in *Farmer* that "the evidence was sufficient to permit the jury to determine whether respondent's injuries were proximately caused or rendered more serious by reason of the design and construction of the driver's seat. The jury was properly instructed on that issue." *Id.,* 97 Idaho at 751, 553 P.2d at 1315. We explained, 97 Idaho at 750, 553 P.2d at 1314: "An expert witness testified to examination of the steering mechanism and concluded that the damage to the gear box occurred prior to the final impact of the truck in the crash, and that a portion of the gear box mechanism would not have fractured unless it contained faulty material...." . We stated, *"It is undisputed* that the steering malfunctioned in some way during the course of normal operation and there is an absence of evidence of reasonable secondary causes for which defendants-appellants were not responsible." *Id.,* 97 Idaho at 751, 553 P.2d at 1315.

Hence, it is simply incorrect to state that those factual issues were not before and specifically addressed by the *Farmer* jury. Clearly, all of those issues were before the jury on the basis of very extensive expert testimony and evidence, and both the trial jury and this Court had before it the actual damaged gear box which the jury clearly concluded had caused the Farmer truck to run off the road.

The real crux of TRW's argument is not that the issues were not before and properly submitted to the jury on proper instructions, but rather that the jury did not return a sufficiently specific verdict as to IHC's ratio of culpability, vis a vis that of TRW and UOP. The answer to that argument is that if TRW and UOP had availed themselves of the offered opportunity to participate in the *Farmer* action, they

could have demanded such a special verdict. Having had such an opportunity and rejecting it, TRW should not now be heard to complain.

As stated by the Court in *Litton Systems, Inc. v. Shaw's Sales & Service, Ltd.*, 119 Ariz. 10, 579 P.2d 48, 50–51 (Ct.App. 1978):

"Appellant presents the following question for review:

'Is a manufacturer liable to indemnify a distributor on a judgment based solely on strict liability in tort where the manufacturer was timely notified of the action but refused to appear and defend?'"

\*     \*     \*     \*     \*     \*

"Litton claims that having notified Shaw of the pendency of the action by Smith, Shaw is bound by the judgment and must indemnify Litton. It bases its contention on the Restatement (Second) [sic] of Judgments, § 107, which sets forth the rights of an indemnitee against an indemnitor after judgment. The pertinent part of § 107 states:

'In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against

(a) the indemnitee, both are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense, ...' § 107 at 511.

The rationale for the above rule is contained in Comment *c* to the above section of the Restatement. When there has been reasonable notice of the action and a request to defend or participate in the defense, the comment states:

'... since by hypothesis his is the ultimate liability, it is fair that the indemnitee should be able to throw off the burden of the trial and that the indem-

nitor should respond to a request for assistance by the indemnitee. If he fails to give this assistance at the time when it is of greatest importance, it is fair that he should abide by the result of the trial. The fact that it may be inconvenient to him to respond at the time when the indemnitee is sued does not change the equities of the situation, because of his primary duty to satisfy the claim of the creditor or the injured person; if he permits the matter to result in an action his should be the responsibility to see that it does not result in an improper judgment.' § 107 at 513."

As was more pungently stated in *Hessler v. Hillwood Manufacturing Co.*, 302 F.2d 61, 63 (6th Cir.1962):

"We do not think that Hillwood was in a very good position to question whether the defense of the New York case had been skillfully handled by the lawyers employed by Hessler. They were reputable attorneys. There was no claim of fraud, collusion or bad faith on their part ... If Hillwood was of the view that it could defend the case better with its own lawyers, it had full opportunity to do so but declined. *It is not very difficult, after a case has been tried and lost, using ex post facto wisdom, to find fault with someone else's work.*" (Emphasis supplied.)

The accident which is the subject of both *Farmer* and this action occurred in 1971. The trial of the action took place in 1974 and was well tried by able and competent counsel, albeit not with the degree of specificity and detail which TRW *now* suggests to be necessary. The decision of this Court affirming the trial court judgment was rendered in 1976. To require, as does the majority, that the parties return to court and retry stale facts with the difficulty of finding proof and witnesses after so many years is, in my mind, obscene, an abuse of the judicial process, and a disservice to that which we call justice.