848 P.2d 387

Antonette DOTY and John E. Doty, husband and wife; Cheryl Doty and Christopher G. Doty, minors, by and through their natural parent, Antonette Doty; Andrea D. Doty, individually; Antonette Doty, for and on behalf of the estate of Richard E. Doty, Plaintiffs–Respondents,

v.

Anis BISHARA and Jane Doe Bishara, husband and wife; Elias Bishara and Jane Doe Bishara; Bishara's Auto Service, dba American Oil Company, a Maryland corporation, Defendants–Appellants,

and

Kelly–Springfield, a wholly owned subsidiary of Goodyear Tire and Rubber Corporation, Defendant–Respondent,

and

American Oil Company, a Maryland corporation; Lee Tire and Rubber Company, a wholly owned subsidiary of Goodyear Tire and Rubber Corporation, an Ohio corporation; Gillette Tire Company, a corporation; Hennessy Industries, a corporation; and John Does I–X, Defendants.

No. 19003.

Supreme Court of Idaho,
Pocatello, May 1992 Term.

Dec. 2, 1992.

St. Clair, Hiller, St. Clair & Dalling, Idaho Falls, for defendants-appellants. Morton B. Hiller, argued.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for plaintiffs-respondents Doty. Larry L. Smith, argued.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-respondent Kelly–Springfield. Joseph P. Langfield, argued.

BAKES, Chief Justice.

The Bisharas owned and operated a service station in Pocatello, Idaho. In the fall of 1984, the Bisharas purchased a 1976 Chevrolet Blazer to be used as a family vehicle. Shortly after purchasing the Blazer, the Bisharas replaced the tires with new tires manufactured by Kelly–Springfield. Elias Bishara mounted the tires himself on the Blazer using the facilities and the equipment of the family service station. Approximately one year later, in August of 1985, the Bisharas sold the Blazer to the Dotys.

After purchasing the Blazer, the Dotys took it on a vacation to Arizona. On their return to Idaho near Page, Arizona, first a front tire "blew out" followed by a second "blow out" of a rear tire. As a result of the blow outs, the Blazer left the highway and overturned. Mr. Doty received severe and permanent injuries, a son Richard Doty was killed, and the remaining family members suffered injuries.

The Dotys brought suit against the Bisharas and the tire manufacturer Kelly–Springfield, a subsidiary of the Goodyear Tire and Rubber Company. The complaint was filed on August 11, 1987.

On February 8, 1989, the plaintiffs and the defendant Kelly–Springfield entered into a settlement entitled "Covenant Not to Execute" (the "Doty/Kelly–Springfield Agreement"). Pursuant to the Doty/Kelly–Springfield Agreement, Kelly–Springfield would pay the plaintiffs $500,000 and remain a party to the litigation, but their liability would be limited to the $500,000.

When they learned of the settlement, the Bisharas moved to dismiss Kelly–Springfield from the action as there were no cross-claims or counterclaims involving Kelly–Springfield. This motion also included a request to inform the jury of the Doty/Kelly–Springfield Agreement. The trial court denied both parts of the motion.

The trial was bifurcated and the issue of liability was tried separately from the issue of damages. At the liability trial, the Dotys and the manufacturer, Kelly–Springfield, asserted that the Bisharas improperly mounted the tires on six-inch wide rims rather than the recommended eight-inch wide rims. They also asserted that the manner in which the Bisharas mounted the tires caused the tire bead to be kinked, inducing premature failure.

The Bisharas, on the other hand, introduced expert testimony that a manufacturing defect caused the tire bead to fail and that the mounting of the tires could not have caused the failure. The Bisharas requested a strict liability instruction based on their evidence that the cause of the blowout was Kelly–Springfield's defectively manufactured tires. However, the trial

judge refused the Bishara's requested instruction.

The trial court submitted the case to the jury on a special form which included the question of Kelly–Springfield's negligence, but did not allow the jury to find against Kelly–Springfield on a strict liability tort theory. The jury attributed 100% of the negligence to the Bisharas and none to Kelly–Springfield.

The parties then empaneled a second jury to try the issue of damages. On the second day of trial, the plaintiffs and the Bisharas stipulated to the amount of damages. The Bisharas filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial on the liability issues. The trial court denied the Bisharas post-trial motions and the Bisharas appeal.

The issues raised on appeal are:

1. Did the trial court err in refusing the Bisharas' requested jury instructions?

2. Did the trial court err in failing to grant the Bisharas' Motion to Dismiss Kelly–Springfield and to disclose to the jury the Doty/Kelly–Springfield Covenant Not To Execute?

3. Did the trial court err in refusing to allow the Bisharas to inform the jury at *voir dire* and during opening argument that the Dotys' original complaint had alleged negligence on the part of Kelly–Springfield?

4. Did the trial court err in admitting certain evidence?

We address first the issue of the trial court's failure to instruct the jury on the issue of strict liability against Kelly–Springfield. Doty's original complaint alleged negligence against both the Bisharas and Kelly–Springfield, and a strict liability in tort cause of action against Kelly–Springfield. When the plaintiffs and Kelly–Springfield entered into the "Covenant Not To Execute," the Bisharas were then placed in the position of not only defending against the Dotys' action, but also of proving that Kelly–Springfield's defective tires were the cause of the Dotys' injuries. Because of the agreement between Doty and Kelly–Springfield, the Dotys had no incentive to proceed with their claim against Kelly–Springfield, and the burden of proving that Kelly–Springfield was negligent or strictly liable was now upon the Bisharas rather than upon the plaintiffs.

Using the same standard of evidentiary proof that the plaintiff Dotys would have had to use to prove a strict liability claim against Kelly–Springfield, Bisharas had the burden of proving that the tires were defective, either by direct evidence of a tire defect, or by a circumstantial evidence *prima facia* case for strict liability, under *Farmer v. International Harvester*, 97 Idaho 742, 553 P.2d 1306 (1976). A circumstantial evidence showing under the *Farmer* case would have required proof of: (1) the malfunction of the product; (2) the lack of evidence of abnormal use; and (3) proof excluding the possibility of other "reasonable causes." 97 Idaho at 747, 553 P.2d at 1311.

In determining whether or not to give a party's requested instructions, the trial court must view the facts most favorably to the party requesting the instruction. *Farmer v. International Harvester Co.*, 97 Idaho 742, 749, 553 P.2d 1306, 1313 (1976). A party is entitled to have its theory of the case included in the instructions given to the jury if that theory is supported by any reasonable view of the evidence. *Mortensen v. Chevron Chemical Co.*, 107 Idaho 836, 693 P.2d 1038 (1984); *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976); Annot., "Products Liability: Proof, Under Strict Tort Liability Doctrine, That Defect was Present When Product Left Hands of Defendant," 54 A.L.R.3d 1079, § 3, at 1095–96 (1974); Annot., "Products Liability: Proof of Defect Under Doctrine of Strict Liability In Torts," 51 A.L.R.3d 8, § 2 (1973); Prosser, Torts § 103, at 673–74 (4th ed. 1971).

In order to make a *prima facie* strict liability case against Kelly–Springfield, the Bisharas were either required to introduce direct evidence that the tires were defective when they left the control

of Kelly–Springfield, or a circumstantial evidence case which required Bisharas to show "proof of the malfunction of a part for which the manufacturer alone could be responsible ... *or the elimination of other likely causes by satisfactory evidence.*" *Murray v. Farmers Ins. Co.,* 118 Idaho 224, 227, 796 P.2d 101, 104 (1990), *quoting* W. Prosser, *Law of Torts* 673–74 (4th ed. 1971) (emphasis added).

■ After careful review of the Bisharas' evidence, and the testimony of their expert witnesses, we conclude that the Bisharas not only made out a circumstantial evidence *prima facie* case under the theory of *Farmer v. International Harvester,* but that they also made out a *prima facie direct* evidence case that the tires were defective when they left the manufacturer, and therefore it was not necessary for the Bisharas to negate all other probable causes which might have caused the tires to fail, although their evidence establishes they did that also.

The Bisharas' expert, Thomas Michael Dodson, testified that the tire in question failed due to a separation or break in the bead bundle (wires running around the bead of the tire) because the wires had rusted and pitted which weakened them and caused them to fail from flexing fatigue. He testified that the rusting and pitting was caused by moisture from inside the tire which penetrated into the wall of the tire where the bead bundle is located. His testimony explained that the inside of all tubeless tires, including the tire involved here, has a special rubber coating which prevents the air inside the tire, which contains water vapor, from penetrating through the sidewall of the tire. When the air penetrates the sidewall and escapes, it takes the moisture with it, and when the moisture comes into contact with the bead wires it rusts them and they eventually fail due to corrosion, pitting and flexing fatigue. Dodson testified and pointed out to the jury a "cracking pattern on the inside of the tire" involved in the accident, Tr. p. 696, a phenomenon described as "crazing," which permitted the air and water to penetrate the sidewall of the tire.

He further testified that, in addition to the special rubber coating on the inside of the tire, as an additional protection to protect the bead bundles from rusting, the bead bundles are separately insulated with a coating of a rubber material to preclude the moisture in the air in the tires from reaching the wires to prevent them from rusting and pitting. He examined the bead bundles on the particular tire taken from the Dotys' vehicle and pointed out that there was very little insulation surrounding those wires. Tr., Vol. 5, p. 678–79. He then concluded that a combination of the "crazing" and the inadequate insulation around the bead bundles permitted the wires in the bead bundle to rust, pit, and ultimately develop flexing fatigue and break. He testified that even where a tire is damaged or cut and ultimately fails at that location, the wires would only be rusted at the location of the injury, and "a couple of inches away it will be pristine because it is protected by the rubber. There is just no way in a tire that's made properly for the moisture to get around the complete circumference, it just can't do it." Tr., p. 699. However, he testified that the wires in the tires in question were entirely rusted.

The expert Dodson then explained how the tire most probably became defective. He explained how tires are made, referring to the tire assembly mechanism as a mold with a bladder inside it. The material is injected into the mold and the bladder is expanded to a pressure of 300 lbs per square inch, and the tire is formed. He testified that if there is not sufficient material injected into the mold, when the bladder is expanded inside the mold the material will be stretched too far, causing problems such as the ones found in the tires in this case. He testified that in his opinion the defects in these tires were most probably caused by a manufacturing defect, *i.e.,* inadequate insulation on the bead bundles and defective interior sealing causing "crazing," which defects were in the tires when they left the manufacturer.

Dodson further testified that neither the mounting process, the mounting of the

tires on the six-inch rims, nor a misuse of the tires after they were put on the vehicle could have caused the condition which resulted in the failure which occurred in the tire in question.

The Bisharas' other expert, John T. Meyers, a metallurgical engineer, also testified concerning the pitting and fatigue cracks in the wires which he said resulted from some defect in the manufacturing process while the tires were in the control of the manufacturer.

■ The trial judge, in determining whether or not the Bisharas were entitled to a strict liability instruction, weighed the evidence from all of the parties, rather than merely looking at the Bisharas' evidence in determining whether they had made out a *prima facie* case, thus entitling them to the strict liability instruction. However, *Farmer v. International Harvester* held that the court should only look at the plaintiff's (or the person asserting the claim) evidence, and not all of the evidence in the case. In this case the Bisharas were entitled to have their evidence evaluated separately to determine whether they had introduced sufficient evidence to establish either a direct or a circumstantial *prima facie* case of strict liability. When viewed in a light most favorable to the party making the claim of strict liability, a reasonable juror could have determined that the tires were defective when they left the manufacturer. A party is entitled to have the jury instructed upon its theory of the case, if "there is a reasonable view of the evidence presented in the case that would support that theory." *State v. Eastman*, 122 Idaho 87, 90, 831 P.2d 555, 558 (1992); *State v. Fodge*, 121 Idaho 192, 824 P.2d 123 (1992); *Hodge v. Borden*, 91 Idaho 125, 417 P.2d 75 (1966). The Bisharas' evidence presented at trial was stronger than the evidence in the *Farmer v. International Harvester* case, which this Court said was sufficient to justify an instruction on strict liability of the manufacturer. Bisharas were entitled to have the jury instructed on Kelly–Springfield's strict liability in tort. *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306

(1976). Failure to give that instruction was reversible error and requires a new trial in this case.

Since we are reversing and remanding for a new trial, we will consider the other issues raised by the Bisharas which may again be presented again on retrial. I.C. § 1–205. The Bisharas assert that the Doty/Kelly–Springfield Agreement was in essence a "Mary Carter Agreement" and that it was unfair and prejudicial not to permit the agreement to be disclosed to the jury. The Bisharas allege that the Doty/Kelly–Springfield Agreement allowed the Dotys and Kelly–Springfield to "double team" the Bisharas and misled the jury.

■ The specific provisions of a Mary Carter Agreement vary, but the essential elements of this type of agreement are: (1) the agreeing defendant remains in the litigation, however total liability is limited by the agreement; (2) the agreement is secret; and, (3) the agreement specifies a certain amount to be paid to the plaintiff, notwithstanding the outcome of the jury verdict. In return, the agreeing defendant's liability for payment is decreased in direct proportion to the increase in the non-settling defendant's liability for payment. *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986). It is this third element that separates a Mary Carter Agreement from other settlement agreements. *Quick v. Crane*, 111 Idaho 759, 778, 727 P.2d 1187, 1206 (1986).

■ The Doty/Kelly–Springfield Agreement does not contain the third element. While the agreement required Kelly–Springfield to remain in the litigation, Kelly–Springfield's total liability was $500,000, irrespective of the jury verdict. There was no provision for this amount to be decreased or avoided through increasing the plaintiffs' damages against the non-settling defendants (Bisharas). Therefore, the agreement did not have to be disclosed solely because of its status as a Mary Carter Agreement.

■ The Bisharas nevertheless argue that the agreement should have been disclosed to the jury because the settlement

eliminates the plaintiffs' incentive to establish that Kelly–Springfield caused part or all of the plaintiffs' damage, and therefore it should have been disclosed to the jury under I.R.E. 408 which allows admission of compromises to show "bias or prejudice of a witness." The Bisharas argue that while the individual witnesses probably did not have knowledge of the Doty/Kelly–Springfield Agreement, the fact that the Dotys and Kelly–Springfield had entered into the agreement affected the manner in which the parties' attorneys planned and conducted their litigation strategy. The Bisharas argue that the agreement caused Kelly–Springfield to fail to assert any claim of negligence on the part of John Doty and, conversely, to cause the Dotys to "team up" with Kelly–Springfield to negate any negligence or strict liability on Kelly–Springfield's part, and thus to show that the entire cause of the accident was the Bisharas' negligence.

The determination of whether the settlement agreement should be disclosed to the jury rests in the "broad discretion" of the trial court. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho at 605, 726 P.2d at 717. Although we find no abuse of discretion in not disclosing the agreement, we leave to the discretion of the trial court on retrial the determination of whether the Doty/Kelly–Springfield Agreement should be disclosed to the jury.

 Next, the Bisharas assert that the trial court erred in failing to dismiss Kelly–Springfield as a party to the litigation. They assert that because of the agreement, Kelly–Springfield no longer had a financial interest to protect because there were no claims remaining against Kelly–Springfield. While the Dotys' recovery from Kelly–Springfield was limited by the agreement, the Bisharas defensive strategy was to implicate Kelly–Springfield as the responsible party. Kelly–Springfield was listed on the jury verdict in apportioning negligence. Dismissing Kelly–Springfield might have ultimately led to further litigation between the Bisharas and Kelly–Springfield to solve contribution claims. *International Harvester v. TRW, Inc.,* 107 Idaho 1123, 1128, 695 P.2d 1262, 1266 (1985). Accordingly, the trial court did not err in refusing to dismiss Kelly–Springfield.

 The Bisharas further assert that the trial court erred in denying their motion to inform the jury at *voir dire* that the Dotys had sued Kelly–Springfield in the original complaint. The Bisharas urge that failure to so instruct the jury misled the jury as to the true relationship between the Dotys and Kelly–Springfield. However, the trial court did inform the jury that the Dotys had sued Kelly–Springfield alleging negligence. The trial court gave the jury an instruction which states that:

> Plaintiffs have sued the defendants Bishara and Kelly–Springfield Tire Company for negligence and assert that Bisharas were negligent in their mounting and installation of the tires. Bisharas deny that they were negligent and assert that the fault, if any, was the result of negligence on the part of Kelly–Springfield Tire Company in the manufacturer [sic] of the tire.

This instruction informed the jury that the Dotys had sued Kelly–Springfield. Any further instruction was unnecessary. The trial court did not err.

 Next, the Bisharas urge that the trial court erred in allowing the Dotys to introduce evidence as to tire mounting techniques. This argument is without merit. This information was relevant to the issue of the Bisharas' negligence. There was no error.

 Finally, the Bisharas argue that the trial court erred in allowing the Dotys' expert witness, Mr. Roman Beyer, to testify concerning observations made by a non-disclosed expert witness, Mr. Herb Hinden. During trial, a question arose as to what damage might have been done to the tires by the experts who examined the tires. Before Mr. Beyer had handled the tires, Mr. Hinden had examined the tires and was the person who had dismounted the tires from the rims. Mr. Hinden had taken numerous photographs of the tires before and after they were dismounted and had made various notes concerning what damage he

# 336

might have caused to the tires. Mr. Beyer testified that he compared Mr. Hinden's photographs with his own photographs and used Mr. Hinden's notes to form his own independent opinion as to what damage might have been done in the dismounting process.

 The trial court, in its discretion, may allow an expert to render an opinion based in part upon hearsay or other inadmissible evidence, as long as the expert testifies as to the specific basis of his opinion and reaches an opinion through his own independent judgment. *Keller Lorenz Co. v. Insurance Assoc. Corp.*, 98 Idaho 678, 570 P.2d 1366 (1977). Mr. Beyer's testimony indicates that he relied in part on the notes of Mr. Hinden, as well as his own investigation, in forming and rendering his own independent expert opinion concerning any defects in the tires. Beyer further testified that such foundational evidence was typically relied on by experts in his field in forming their expert opinions. The trial court did not err in admitting this evidence. Idaho Rules of Evidence, Rule 703.

The judgment of the district court is reversed, and the case remanded for a new trial. Costs to appellant. No attorney fees allowed.

BISTLINE and JOHNSON, JJ., and CAREY, J. Pro Tem., concur.

BISTLINE, Justice, concurring specially:

My initial conclusion as to the outcome of this multi-faceted controversy was to fully concur with the majority opinion authored by the Chief Justice. On further reflection, however, while continuing to so concur, I am not without some reluctance relative to the views expressed by Justice McDevitt.

McDEVITT, Justice, dissenting.

I dissent from that portion of the Court's opinion reversing the trial court's refusal to instruct as to strict liability as requested by the Bisharas.

In *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976), this Court held:

A *prima facia* case may be proved by direct or circumstantial evidence of a malfunction of the product in the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant.

97 Idaho at 747, 553 P.2d at 1311.

A plaintiff need not exclude every possible cause but only reasonably likely causes. (Citations omitted.)

97 Idaho at 749, 553 P.2d at 1313.

To be entitled to the instruction requested, the Bisharas were required, under the *Farmer* holding, to produce evidence of the "reasonably likely causes" and evidence of the "absence of evidence of reasonable secondary causes." This the Bisharas failed to do.